## Fox, Baum & Co. *v.* KcKinney & Smith.

Lease—Crop may be Held for Rent.

Where a lease contained a stipulation as follows: "And the said party of the second part, in consideration of the said lease, binds himself to pay unto the party of the first part, the sum of $700, in U. S. gold coin, on or before the first day of October, 1880, and for security of said rental of $700, the party of the second part binds himself, his executors or administrators, *to store the entire crop* of wheat, oats, or other cereals, in the warehouse at Turner or Salem, *in the name of the party of the first part, it to be and remain his sole property until the said $700 has been paid:*" *Held,* That it was competent for the owner of land to provide in the lease that the produce or crops grown on the land were to be and remain the property of the lessor until the rent should be paid, and that such stipulation did not make the instrument a chattel mortgage.

Landlord and Tenant.

The principle upon which this doctrine is maintained is, that the owner of the land, being also the owner of the fruits or the products of it, in parting with the use of it to another, may make such conditions and reservations in relation to the land itself, or the products grown from it, as he chooses, instead of parting with the full right. In such case the property in the products of the farm is in the landlord, and not in the tenant, until the performance of the condition upon which the ownership of the crop shall be changed.

Where the parties intend by their agreement that the landlord should be the owner, and have control of the crop, until the rent is paid, like all stipulations of that character, the intention of the parties is the rule of construction.

Appeal from Marion. The facts are stated in the opinion.

*Strahan & Bilyeu, and Bonham & Ramsey,* for appellants.

Is the instrument in question a chattel mortgage? We maintain that it is, if it is not void. No particular form is necessary to constitute a mortgage. (Jones on Chattel Mortgages, sec. 60.) Whatever language may be used, if it shows that the parties intended a sale of chattels as *security,* the instrument will be construed to be a mortgage. (*Johnson* v. *Crofort,* 53 Barb., 574; *Thompson* v. *Blanchard,* 4 N. Y., 303; Edwards on Bailments, sec. 73.) The instrument comes

clearly within these authorities, and is a chattel mortgage; but we submit that the lien would not attach to the grain as to *bona fide* purchasers from Lane, without notice, *until it was stored* in the warehouse at Turner or Salem, in the name of Thompson. (*Butterfield* v. *Baker*, 5 Pick., 522; *Munsell* v. *Carew*, 2 Cush., 50.)

*W. H. Holmes*, for respondent.

The contract is in the nature of a reservation for rent. The landlord, as owner of the soil, is primarily entitled to the proceeds thereof. A reservation for rent may as well be for money to be paid out of the crop as for a part of the crop itself. (Taylor's Landlord and Tenant, sec. 152; Benjamin on Sales, secs. 78, 381; *Cooper* v. *McGrew*, 8 Or., 327; *Lewis* v. *Lyman*, 22 Pick., 437; 18 Ver., 461; 78 Ill., 309.) The crop, which was the subject of the contract, had a potential existence, and by the terms of such contract, Thompson never parted with his property, except upon conditions which were not complied with by the lessee.

By the Court, Lord, C. J.:

The main, and in fact only question to be decided in this case, is the construction of the lease admitted in evidence against the objection of the appellants. Nearly every other question presented by the bill of exceptions, and discussed, grows out of what is claimed to be the proper construction of the lease, and the legal effect thereof. That portion of the lease to which objection is directed reads as follows: "And the said party of the second part, in consideration of the said lease, binds himself to pay unto the party of the first part the sum of $700 in United States gold coin, on or before the first day of October, 1880, and *for security of said rental* of $700, the party of the second part binds himself, his executors, or administrators to store the entire crop of wheat, oats or other cereals in the warehouse at Turner or Salem, in the name of the party of the first part, *it to be and remain his sole property until the said $700 has been paid.*"

It is contended by the appellants that the effect of these words is to make the instrument a chattel mortgage, and not a lease; and as a chattel mortgage, it can only operate on property in actual existence at the time of the execution, and cannot be given, as was attempted to be done in this case, upon a crop before it can be said to be *in esse*; and also, as against the lessee's creditors, it would not be effectual unless filed as a chattel mortgage. Properly, then, the first question to be decided, is the instrument under consideration a chattel mortgage? If this question shall be answered in the negative, it becomes unnecessary to examine the remaining questions in connection therewith and out of which grow several of the objections assigned as errors.

In support of the position that the instrument in question is a chattel mortgage, the appellants cite, and seem principally to rely upon the case of *Johnson* v. *Crofort*, 53 Barb., 574, in which it is held that a provision in a lease of a dairy farm, that the lessor shall have full title, with the privilege of taking possession of all the products of the farm, in payment for the rent, amounts to a mortgage of such products, and as such, it would not be effectual against the lessee's creditors unless filed, or recorded as a chattel mortgage. An examination of that case will show that the facts and the ground upon which it is predicated are not exactly on all fours with the case under consideration.

The lease, in that case, to Tefft, the lessee, was absolute, and with the exception of the proceeds of three-fifths of the milk to be sold to the cheese factory, he was the *owner*, and entitled to the possession of it, and the court held that the provision of the lease above referred to, was a mere security for money, and necessarily in the nature of a mortgage. But a different state of facts prevails in the case here. The lease is not absolute, but encumbered with a reservation in which the idea of ownership of the products of the lessee is expressly concluded. The products are to be and remain the sole property of the lessor until the rent is paid. This is a contract

which provides in whom the ownership of the products shall vest as soon as they come into existence, and the condition upon which that ownership shall change. It is not the case where the property, or products, as soon as they come into existence, vest in the lessee and become his property, which he may hypothecate as a security for the payment of money.

Two other cases, not cited in the brief, but to the same effect as *Johnson* v. *Crofort, supra,* are to be found in *Werd* v. *Stanley,* 12 Fla., 167, and *Mitchell, et al.,* v. *Batgett,* 33 Ark., 394.

In the former, *Werd* v. *Stanley, supra,* it was held that an agreement in writing properly executed, and stipulating that the amount due for rent of land should be paid before the crops are removed, was a security for the payment of money, and under the statute operated as a mortgage. But it will be observed, in this case, that the owner, by his agreement, has parted with the absolute use of his land, and the products to be grown out of it—he has neither retained nor reserved any right of property in the products. These, under the agreement, belong to the tenant, only it is stipulated that the amount due for rent of land should be paid before the crop is removed. This the court held was a "security for the payment of money," and *brought the agreement within the very words of the statute.*

In the latter, *Mitchell, et al.,* v. *Batgett, supra,* it was held that the lease executed by lessor and lessee, reserving a lien to the lessor on the crop produced on the land, is a chattel mortgage, and a written agreement properly executed, stipulating that the amount due for rent of the land should be paid before the removal of the crop, is a chattel mortgage of the crop. The authority of this case rests upon *Johnson* v. *Crofort, supra,* and falls distinctly within the principle announced in this case. The lease was absolute. A promissory note for $900 was given for the rent, and secured by a clause that "a lien is hereby given and retained upon the crops grown on said land," and also further stipulating not to dispose of or

remove any part of the crops, until the note had been paid. Here the right of property in the tenant to the products is expressly recognized by the creation of a lien to secure the rent, which is not parallel with the case in hand. Thus, we think, it will appear in all these cases, the provision that it should be security for rent, shows that the property was in the tenant, and not in the landlord. Mr. Herman says, "any condition in a lease giving the lessor a lien upon the *tenant's property* as a security for rent, is a chattel mortgage." (Herman on Chattel Mortgages, 68.)

Cases where by the terms of the agreement the products are not to become the property of the tenant, do not fall within the principle, and certainly cannot be considered to be within the power of the tenant to chattel mortgage, either by stipulations in a lease, or otherwise. From this review of the cases, it will be seen that none of them controvert the right of the lessor of land to provide in the lease that produce, or crops grown on the lands, were to be and remain the property of the lessor until the rent should be paid. It has been repeatedly decided in Vermont that the lessor of the land may stipulate in the lease that the crops grown on the premises by the lessee shall remain the property of the lessor until the rent shall be paid, and that such a provision is valid, not only between the parties, but as to third persons. (*Smith* v. *Atkens*, 18 Vt., 461; *Paris* v. *Vail*, 18 Vt., 277; *Briggs* v. *Oaks*, 26 Vt., 138; *Gray* v. *Stevens, et al.*, 28 Vt., 1; *Edson* v. *Colburn*, 28 Vt.; 637; *Baxter* v. *Bush*, 29 Vt., 465; *Bellows* v. *Wells*, 36 Vt., 599; *Cooper* v. *Cole, et al.*, 38 Vt., 191. The same principle is in effect held in *Lewis* v. *Lyman*, 22 Pick., 437.)

In *Bellows* v. *Wells, supra,* Chief Justice Poland said that "the reasoning upon which these decisions rest is, that the owner of the land, being also the owner of the fruits or products of it, in parting with the use of it to another, may make such conditions and reservations in relation to the land itself, or the products grown from it, as he chooses, instead of

parting with the full right.    The principle is the same as that upon which conditional sales of personal property are upheld."

In New York, the right of the landlord to make such stipulations in his lease as shall provide for his ownership of the crops until the rent is paid, has been quite often decided, and the distinction made between these cases and *Johnson* v. *Crofort* explained.

In *McCombs* v. *Becker*, 3 Hun., 343, the court say: "It was entirely competent for the defendant and his landlord to agree that the hay to be raised on the demised premises should be and remain the property of the defendant until the rent should be paid, and the conditions of the case be satisfied by the tenant.    Instead of the tenant mortgaging the crops to be grown as security for the rent, he may agree that the crop shall be the landlord's until the rent be paid.    In the one case the agreement is that the crop shall be the landlord's if the tenant does not pay the rent, in the other case, it shall not be the tenant's property until he does pay it.    The case of *Johnson* v. *Crofort*, *supra*, does not hold otherwise, but does hold that the terms of the contract in that case gave the landlord only a chattel mortgage interest, which was defeated for want of filing."    (*Andrews* v. *Newcomb*, 32 N. Y., 417; *Van Hoover* v. *Cary*, 34 Barb., 9.)

In the lease under consideration it is not only provided and expressly stipulated that the entire crop is to be stored in the warehouse, in the name of the landlord, but the same was to be and remain his sole property until the rent was paid.    The property is in the landlord and not in the tenant until the performance of the conditions upon which the ownership of the crop shall be changed.

Nothing, it seems to us, can be clearer than that the parties intended by their agreement that the landlord should be the owner and have control of the crop until the rent was paid, and in all stipulations of this character, the intention of the parties is the rule of construction.    "Taking the whole

contract together," says Allen, J., in *Van Hoover* v. *Cary*, "it was evidently the design that the property in the products of the farm should be in the plaintiff, and not in the lessee, until the payment of the rent. The contract as thus interpreted is not illegal nor unreasonable." To the same effect is the language of Judge Boise, in *Cooper* v. *McGrew*, 8 Or., 330, in which he says, "the policy of the law is to give such effect to the contract of the parties as will carry out their intentions, whenever it can be done without hazard to the rights of others."

In contracts of this character the subject matter of the agreement does exist, potentially, and as was said, "though the lessor had it not actually, nor certain, yet he had it potentially—for the land is the mother of all roots and fruits, and, in our judgment, the owner of the land may, as in the instance before us, make such conditions or reservations in his contract for the cultivation of his land, as shall retain the ownership of the crops, grown on his premises, in himself, until the rent shall be paid. Nor do we apprehend that the operation of this principle can work any injustice, as it secures the rights of both the landlord and tenant, and does not justly affect the rights of third parties, for the creditors of the tenant can have no greater claim upon the crop than his ownership in it."

But it is claimed, further, that the conduct of the respondents in issuing wheat checks to Lane, in his name, after they had been notified by Thompson, his landlord, that the wheat being hauled and stored by Lane in their warehouse, belonged to him, renders them liable to the appellants to whom these checks had been transferred, through their agent, Harris, by Lane, when the respondents refused to deliver to them the wheat, or store it, in their name, in the warehouse upon the presentation of the checks and the request so to do. The wheat checks only indicate by whom, and the amount of the wheat, deposited. The evidence, however, shows that on the same day that these checks were transferred by Lane to the appellants, through their agent, Harris, that he was noti-

fied, by the respondents, of Thompson's claim and ownership of the wheat for which the checks so transferred called, and this, too, before any money was paid for the wheat on such transfer. We see no application of the doctrine of estoppel, as discussed, nor do we think the court erred in striking out the new matter in the reply. It follows from these views that the judgment of the court below is affirmed.

Judgment affirmed.