FIRST NATIONAL BANK OF GALATA, Respondent, *v.* MONTANA EMPORIUM CO., Appellant.

(No. 4,351.)

(Submitted April 18, 1921. Decided May 2, 1921.)

[197 Pac. 994.]

*Conversion — Chattel Mortgages—Complaint — Sufficiency— Real Property — Contract of Sale — Possession Implied— Crops.*

Conversion—Chattel Mortgaged Property—Complaint—Sufficiency.

1. The complaint in an action in conversion by the purchaser of wheat under a bill of sale intended as a mortgage to secure a loan made to the seller, which alleged that it had been agreed between them that the former should sell the wheat and apply the pro-

ceeds to the satisfaction of the note, that a third party wrongfully took possession of it and deposited it in defendant's elevator for sale, that plaintiff notified defendant of its claim to it, that plaintiff was the owner and entitled to immediate possession of it, that defendant sold it, and that demand had been made for the proceeds, stated a cause of action.

Same—Possession Implied, When.

2. A contract of sale of land provided, among other things, that the vendee should pay the taxes, that time should be of the essence in making deferred payments, that the vendor should have the right to declare a forfeiture in case of default as well as the right of re-entry in such case, *etc.* It was silent on the question of the vendee's immediate possession. *Held,* that his right to possession arose by clear implication, that he was therefore the owner of the crops grown and harvested thereon while the contract was in force, and that title to them passed by the bill of sale to plaintiff, in the action in conversion above.

*Appeal from District Court, Toole County; H. H. Ewing, Judge.*

ACTION by the First National Bank of Galata against the Montana Emporium Company. Judgment for defendant. From an order granting a new trial to plaintiff, defendant appeals. Affirmed.

*Messrs. Stranahan & Stranahan,* for Appellant, submitted a brief; *Mr. C. R. Stranahan* argued the cause orally.

It seems clear to us that the complaint in this case is wholly insufficient. If it is the purpose of the plaintiff to recover for conversion of money, then it is insufficient for a number of reasons, first, an action for the conversion of money will lie only when it can be described or identified as a specific chattel. (38 Cyc. 2015.) As a rule, no action can be maintained for the conversion of money except where an agent or other vice-principal receives money in a fiduciary capacity, and is bound to turn over the identical money. (See note to *Hazelton* v. *Locke,* 20 L. R. A. (n. s.) 35.) Neither is the receipt of the proceeds, or a part thereof, of goods which have been wrongfully converted by a third party a conversion. (38 Cyc. 2019.) Neither does the complaint allege the date of the conversion of the money, nor does it show any fact that entitled the plaintiff to the specific money

in question. Upon this subject see the case of *Young* v. *Bray,* 54 Mont. 415, 170 Pac. 1044, wherein the court holds that the complaint in an action by a mortgagee was insufficient for similar reasons.

If the plaintiff in this action is seeking to recover for wheat converted, then there is no allegation in the complaint that the defendant ever converted the wheat or the date of its conversion, nor the value thereof at the time of any alleged conversion. The plaintiff having admitted that the bill of sale in question was intended as a chattel mortgage, it is wholly insufficient under the provisions of Chapter 86, Session Laws of 1913, pages 378 to 381, section 11 of that Chapter providing that such a bill of sale must be executed the same as a chattel mortgage.

Under the holding in *Harrington* v. *Stromberg-Mullins Co.,* 29 Mont. 157, 160, 74 Pac. 413, we do not think that the complaint states a cause of action either for the conversion of wheat or the conversion of money.

It is next insisted by the defendant that the contract between Benson and Taylor being conditional, upon the said Taylor making the payment therein provided for, no title passed to Taylor either as to the land or as to the emoluments thereof, and as this contract was a part of plaintiff's case in its effort to prove title to the wheat in question, the plaintiff's claim to the wheat falls unless it proves a fulfillment of the contract on the part of the plaintiff or its predecessor in interest, Taylor. This was not done.

We believe that the foregoing proposition is conceded by the plaintiff, namely, that if the title to the lands under the contract between Benson and Taylor did not pass to Taylor, then the plaintiff cannot recover in this action.

We insist that the plaintiff having failed to make proof of the payments provided for in the contract prior to the time it claimed title to the wheat, and without proving that Taylor was in the actual possession of the wheat, no title to the wheat passed to Taylor under the contract. The proof shows

that Benson claimed the wheat before it went into the defendant's elevator, and also the plaintiff knew that Taylor had not fulfilled the contract with Benson.

The defendant insists that inasmuch as the plaintiff failed to prove that either it or its predecessor was ever in possession of this wheat, no right to possession has been shown, and therefore the plaintiff cannot recover. Where there is no executed conveyance and a mere covenant to convey, the title does not pass, and therefore the vendor has no lien, but has the title. (*Cook-Reynolds Co.* v. *Chipman,* 47 Mont. 289, 133 Pac. 694, 696.) The cases generally hold that where there is only an agreement to convey, crops do not pass to the vendee under the agreement, or do not pass, in any event, until a fulfillment of the contract is shown, or title actually passes to the vendee. (8 R. C. L. 358.) Usually the vendee is not entitled to possession until he has fully complied with his part of the contract and is entitled to a conveyance. (39 Cyc. 1620.) Even after the purchaser goes into possession and the contract falls through, the vendee may recover for the rents and profits in the meantime. (39 Cyc. 1629.) This being an action in conversion, the plaintiff must prove that it is the owner and entitled to the possession of the property in question (*Potter* v. *Lohse,* 31 Mont. 91, 77 Pac. 419).

*Mr. I. W. Church* and *Mr. Fletcher Maddox,* for Respondent, submitted a brief; *Mr. Maddox* argued the cause orally.

There is but one question involved in this appeal: Did Taylor acquire title to the growing crop of grain by virtue of the contract for the sale of the land given to him by Benson August 2, 1916? The plaintiff contends that the execution and delivery of the contract of August 2, 1916, in the absence of any stipulations therein to the contrary, or any express reservation of the grain, or reservation of possession, carried with it the possession or right to the immediate possession of the land in question, and hence the possession and right to possession of any growing crops thereon and which

were cut and harvested before any forfeiture of the contract
by the vendor in the manner stipulated therein. (8 R. C. L.,
sec. 5, pp. 358, 360; *Woodward* v. *McCollum,* 16 N. D. 42,
111 N. W. 623; *Nearing* v. *Coop,* 6 N. D. 345, 70 N.˙ W. 1044;
*Marks* v. *Tichenor,* 85 Ky. 536, 4 S. W. 225; *Brewer* v. *Her-
bert,* 30 Md. 301, 96 Am. Dec. 582). An extended review
of the authorities by Judge Wolverton is found in *Vancouver
Nat. Bank* v. *Law Union & Crown Ins. Co.,* 153 Fed. 440.
The authorities appear to be uniform to the effect that in
case of loss or destruction of the premises after delivery of
a contract of sale, the vendee bears the loss. (*Sewell* v.
*Underhill,* 197 N. Y. 168, 134 Am. St. Rep. 863, 18 Ann. Cas.
795, 27 L. R. A. (n. s.) 233, 90 N. E. 430; *Skinner & Sons'
etc. Dock Co.* v. *Houghton,* 92 Md. 68, 84 Am. St. Rep. 485,
48 Atl. 85; *Marion* v. *Wolcott,* 68 N. J. Eq. 20, 59 Atl. 242;
*Sutton* v. *Davis,* 143 N. C. 474, 55 S. E. 844; *Reed* v. *Lukens,*
44 Pa. St. 200, 84 Am. Dec. 425; *People's St. Ry. Co.* v.
*Spencer,* 156 Pa. St. 85, 36 Am. St. Rep. 22, 27 Atl. 113.)

Where a contract of sale is silent on the question of pos-
session, the vendor may put the purchaser in possession, or
the right of possession may arise by necessary implication
from the language of the contract. The right of possession
arising by implication is as effective as though expressly
granted in the written instrument. (39 Cyc. 1621; *Krakow*
v. *Wille,* 125 Wis. 284, 103 N. W. 1121; *Olson* v. *Minnesota
etc. R. Co.,* 89 Minn. 280, 94 N. W. 871; *Able* v. *Gunter,* 174
Ala. 389, ʻ57 South. 464; *Welch* v. *Hover-Schiffner Co.,* 75
Wash. 130, 134 Pac. 526.)

MR. COMMISSIONER JACKSON prepared the opinion
for the court.

The respondent (plaintiff below) sued the appellant (de-
fendant below) for the conversion of $1,068.70, the proceeds
of the sale of 727 bushels of wheat, alleged by plaintiff to
have been its property by virtue of a certain note and bill
of sale to the Galata State Bank, executed and delivered by

one William H. Taylor, intended by the parties to have the effect of a chattel mortgage for the purpose of collateral security for the payment of the note, in the sum of $800, which said note and bill of sale were held by the plaintiff as the assignee of the Galata State Bank.

The complaint alleges: That it was understood between the [1] said Taylor and the Galata State Bank that the wheat should be sold by the Galata State Bank and the proceeds applied to the satisfaction of the said $800 note, and interest, and any other disbursements that might be made by the said bank in and about the threshing and sale of the wheat, and the overplus, if any, was to be paid to the said Taylor; that subsequent to the execution of the note and bill of sale, and prior to the eighteenth day of December, 1916, one Hezekiah Benson wrongfully took possession of the said crop of wheat and without authority, right or title deposited it in the elevator of the defendant for sale; that on December 18, 1916, the Galata State Bank duly notified the defendant of its claim to the wheat and the proceeds thereof; that prior to March 13, 1917, defendant sold the said wheat for the sum of $1,068.70. Then is alleged the ownership and right to the immediate possession of the wheat by the Galata State Bank, and since the sale, to the proceeds thereof, and its repeated demands for the same. Following which it is alleged that on October 20, 1917, the Galata State Bank duly assigned and transferred to plaintiff all its right, title and interest in the said $1,068.70, all its claims and demands against the defendant for the alleged conversion, and the said $800 note, and plaintiff then alleges its ownership and holding of the note; that it is the owner and entitled to the proceeds of the sale of said wheat; that the note has not been paid and is now due.

The answer is in effect a general denial. A jury was impaneled, and at the conclusion of plaintiff's case a motion for a nonsuit was by the court sustained and judgment entered for the defendant. Plaintiff's motion for a new trial

was afterward heard and the judgment entered theretofore was vacated and set aside, and a new trial granted. From the order is this appeal.

The complaint in this action is sufficient under the authority of *Harrington* v. *Stromberg-Mullins Co.,* 29 Mont. 157, 74 Pac. 413. All of the other specifications of error will be disposed of in considering the merits of the last, which is: "The court erred in granting the motion for a new trial, in that there is nothing in the record to show that the title to the grain in question ever passed to the plaintiff, or that plaintiff ever had the right of property or the right of possession, either in the grain or the money, described in plaintiff's [2] complaint." The testimony in the case shows that the grain in question was deposited by Benson at the elevator of the defendant company. It also shows that storage receipts or tickets were given to the said Benson for the said grain in the name of Benson and Taylor. The witness Idsvoog testified he saw Benson haul some of the grain from the ground whereon it had been grown; that he knew the ground; that Taylor had threshed the wheat; that he notified the said Benson and likewise the defendant of the right and title in the grain to the State Bank of Galata. It is also shown that the Galata State Bank duly and regularly assigned, set over and transferred to the First National Bank of Galata all its right, title and interest and claim to the proceeds of the sale of said wheat and its claim against defendant and the note. It is further shown that Taylor parted with his title to the wheat by a bill of sale which he made to the Galata State Bank, and same was considered by the parties to be of the effect of a chattel mortgage for the purpose of collateral security for the payment of a note in the sum of $800, which was executed and delivered by the said Taylor to the State Bank on the same day. The other allegations of the complaint have likewise been sustained, and we are brought to the question of Taylor's title to and ownership of the grain. The record shows by Plaintiff's Ex-

hibit 4 an agreement entered into between Hezekiah Benson, a widower, and William H. Taylor, by the terms of which Benson agreed to convey in fee simple, free of all encumbrances, the land upon which the grain was grown, if Taylor should first make certain payments (the sum of $100 at or before the execution of the contract and other deferred payments aggregating in all the sum of $2,000, "with interest at the rate of eight per cent (8%) per annum, payable annually, on the whole sum remaining from time to time unpaid; and to pay all taxes, assessments or impositions that may be legally imposed upon said land, subsequent to the year nineteen hundred fifteen, and in case of the failure of the said party of the second part to make either of the payments, or interest thereon or any part thereof; or perform any of the covenants on his part hereby made and entered into, then the whole of said payments and interest shall at the election of the said first party become immediately due and payable; and this contract shall, at the option of the party of the first part, be forfeited and determined by giving to said second party, thirty days' notice, in writing of the intention of the said first party to cancel and determine this contract, setting forth in said notice the amount due upon said contract, and the time and place, when and where, payment can be made by said second party.

"It is mutually understood and agreed by and between the parties of this contract that thirty days is a reasonable and sufficient notice to be so given to said second party, in case of failure to perform any of the covenants on his part hereby made and entered into, and shall be sufficient to cancel all obligations hereunto on the part of the said first party and fully reinvest him with all right, title and interest hereby agreed to be conveyed, and the party of the second part shall forfeit all payments made by him on this contract and his right, title and interest in all buildings, fences and other improvements whatsoever, and such payments and improvements shall be retained by the said party of the first, in

full satisfaction and in liquidation of all damages by him sustained, and he shall have the right to re-enter and take possession of the premises aforesaid.

"And the said second party agrees to assume and to pay the encumbrances now of record against the land, consisting of a mortgage by the said first party to W. D. McClintock and Sons for the sum of two thousand dollars with interest at the rate of ten per cent per annum, four per cent of the said ten per cent being embodied in a second or commission mortgage, due December 1st, 1918.

"IT IS MUTUALLY AGREED, by and between the parties hereto, that the time of payment shall be an essential part of this contract; and that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns, of the respective parties."

The right of Taylor to possession under the terms of this agreement is so strongly implied that it cannot be gainsaid. Counsel for defendant cites 39 Cyc. 1620: "Executory contract of sale does not divest the vendor of legal title, but merely confers on the vendee an equitable title and unless the contract provides otherwise, the right to possession is in the vendor." The same authority, developing the subject, declares: "Where a contract of sale is silent on the question of possession, the vendor may put the purchaser in possession, or the right of possession may arise by a necessary implication from the language of the contract. The right of possession arising by implication is as effective as though expressly granted in the written instrument." (39 Cyc. 1621.) Further, the same authority declares right of possession by implication arises: "Where improvements are contemplated; where time is the essence of the contract; where the vendee is to pay taxes and interest with right of vendor to forfeit payments for default; and where right of re-entry for default is given."

Having the right of possession under the contract, and in the absence of reservations or stipulations to the contrary,

Taylor had the ownership and right to the possession of any growing crops on, the land which were cut and harvested before any forfeiture of the contract in the manner therein stipulated. (1 Pomeroy's Equity Jurisprudence, sec. 368; 8 R. C. L. 358–360; *Speicher* v. *Lacey,* 28 Okl. 541, 35 L. R. A. (n. s.) 1066, 115 Pac. 271; *Krakow* v. *Wille,* 125 Wis. 284, 103 N. W. 1121, and cases discussed and cited therein.)

It seems to us from the contract and a review of the cases that by clearest implication, Taylor had the right to immediate possession of the land, and being the equitable owner and entitled to possession, he became the owner of the grain in question, which was harvested while his contract was in force. It was stipulated at the trial that the grain in question was 727 bushels and that the proceeds from the sale thereof was $1,068.70. The witness Idsvoog identified this grain.

Taylor exercised his right when he sold his grain to the Galata State Bank and title passed by the bill of sale. Benson's rights and remedies under the agreement to sell are clearly set out and he was bound thereby. He was a stranger on the ground and his taking the wheat and depositing it with the defendant clearly shows conversion. As between the Galata State Bank and Taylor, no rights of third parties were involved, and section 6128, Revised Codes, and Chapter 86 of the Session Laws of 1913, do not apply. In addition to the above, when Benson deposited the wheat in defendant's elevator and took the storage tickets or receipts in the name of himself and Taylor, he admitted some title to the grain in Taylor. This admission of joint ownership would, we think, be sufficient in itself to take the case to the jury.

For the reasons herein set forth, we recommend that the order of the court appealed from be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the order of the court appealed from is affirmed.

*Affirmed.*