Motion to dismiss denied July 16, 1929; argued March 21; reversed
September 4, 1930

TALLMAN *v.* HAVILL

(291 P. 387)

*W. J. Cooper* of Gresham for appellant.

*W. L. Mulvey* and *B. F. Lindas* both of Oregon City
for respondent.

ROSSMAN, J. The complaint is in the usual form; it alleges that the subject-matter of the action is 9½ tons of oats of the value of $465 owned by the plaintiff October 6, 1927, the day of the alleged conversion. The answer, after denying all allegations of the complaint, alleged by way of "a further and separate answer to said complaint" the matter which we shall now review. October 6, 1927, this defendant (Havill), as plaintiff, commenced an action upon an account against one Pederson and this plaintiff; May 5, 1928, after Pederson had failed to answer, a judgment for the sum prayed for was rendered against him; subsequently Havill obtained a writ of execution and the sheriff levied upon 250 bushels of oats which the anwer alleges belonged to and were in possession of Pederson; after notices of the impending sale were posted Tallman, this plaintiff, on May 8, 1928, filed with the sheriff a claim for the oats which stated that he, Tallman, was their owner; thereafter the sheriff notified him that he would summon a sheriff's jury for the purpose of determining the ownership of the oats if Tallman would advance the necessary fee; after he had refused to make the deposit the sheriff proceeded with the execution sale, and, on the 2d day of July, sold the oats for the sum of $146.50 to one William McIntyre; the answer recites that "upon the 21st day of August, 1928, after said sale had been made and the return of said sheriff had been duly filed * * * C. P. Tallman, through his attorney, W. J. Cooper, entered into a stipulation with the attorneys for the defendant herein * * * that the action

then pending against the said C. P. Tallman should be dismissed; that said stipulation was entered into and filed as a full and complete settlement of the said action between George Havill and plaintiff herein." The answer concludes with the allegation that the oats above mentioned were the property of Pederson and never belonged to Tallman. The plaintiff filed a demurrer to the new matter just reviewed on the ground that these allegations did not state facts sufficient to constitute a defense. When it was overruled a reply was filed which denied all of these averments.

On the trial the testimony revealed the following facts: The plaintiff was the owner of a farm, upon 60 acres of which there was growing in the year 1927 a crop of oats. June 15 of that year he and Pederson effected an oral understanding whereby the latter agreed to purchase the farm and pay its price out of the crops to be thereafter grown on the land. The two agreed that the crop then growing should not pass to Pederson but that it should continue to belong to Tallman. They further agreed that Pederson should harvest that crop of oats and retain one-third as payment of his labor. At the same time Pederson and Tallman prepared a written instrument which contained the following provision:

"It is agreed that party of the second part shall, for a consideration of one-third of the oat crop growing upon the above property at the time of making this agreement, harvest said crop of grain and put the two-thirds belonging to the party of the first part in bins on said property. * * *"

This paper was not signed by either Tallman or Pederson; the plaintiff explained that it was drawn "simply as a memorandum to make the contract from."

The oats were then harvested by Pederson, who placed two-thirds or approximately five hundred bushels "in the new barn" for Tallman and the remaining one-third "in the old barn" for himself. About one year after the above oral contract was effected and the crop had been harvested Pederson and the plaintiff drafted and executed a written instrument setting forth the terms of the sale and purchase of the farm. It contained no reference to the above crop of oats; the plaintiff explained this omission thus: "The matter of the oats, the harvesting of the oats, was left out because the oats had been harvested before the contract was made." After the division of the crop the plaintiff removed a portion of his part and a few days thereafter the sheriff levied the writ of attachment. When the plaintiff was informed that the oats had been seized he served on all parties interested written notice of his claim of ownership; thereupon the sheriff proposed to call a sheriff's jury for the purpose of determining the ownership of the oats, but abandoned this plan, and sold the oats when the plaintiff declined to pay the necessary fee.

We come now to the contention that the circuit court erred when it failed to sustain the demurrer to the new matter alleged in the answer. These allegations aver two distinct sets of facts, (a) that by reason of the plaintiff's failure to deposit with the sheriff in the case of *Havill v. Pederson and Tallman* the cost of a sheriff's jury after he had served written notice of his claim to the oats he thereby conceded that his claim was unfounded, and (b) that when Tallman's attorney and Havill's attorney in the aforementioned action agreed that it should be dismissed as to Tallman they thereby

adjusted not only the claim which constituted the subject-matter of that action but also determined the ownership of the oats.

■ We shall dispose first of that portion of the contention in regard to the sheriff's jury. Or. L., § 229, provides that when personal property is seized by virtue of a writ of execution and any person other than the defendant claims its ownership he may give notice of that fact in writing and the sheriff may thereupon summon six jurors to try the validity of his claim. Or. L., § 230, after empowering the sheriff to subpoena witnesses, and to administer to them and to the jurors their oaths provides: "* * * the verdict of such jury being rendered in writing, and signed by the foreman, shall be a full indemnity to the sheriff, proceeding in accordance therewith, but shall not preclude the claimant from maintaining an action at law for the recovery of the possession of such property, or for damages for taking the same." It has become well established in this state that the sole purpose of the above proceeding is to provide the sheriff with a method whereby he may avoid the danger of trespassing on the property of those who are not parties to the case; therefore, if the verdict is against the claimant, he can not afterwards maintain an action against the sheriff: *Remdall v. Swackhamer,* 8 Or. 502; *Capital Lmbr. Co. v. Hall,* 9 Or. 93; *Hexter v. Schneider,* 14 Or. 187 (12 P. 668); *Vulcan Iron Works v. Edwards,* 27 Or. 571 (36 P. 22, 39 P. 403). But the proceeding, not being judicial in nature, 23 C. J., Executions, § 508, p. 586; *Capital Lmbr. Co. v. Hall,* supra, does not conclude the right of the claimant against any one but the sheriff: *Hexter v. Schneider,* supra; *Coos Bay Ry.,*

*etc., Co. v. Wieder,* 26 Or. 456 (38 P. 338). It necessarily follows that where no determination is had by the sheriff's jury, even though the failure was due to the refusal of the claimant to deposit the necessary fee, he has not precluded himself from prosecuting his claim against any one except possibly the sheriff.

■ We come now to the contention that when Havill and Tallman agreed that Havill's action should be dismissed as to Tallman, they thereby also determined that Tallman had no interest in the oats. The action just mentioned was upon an account and made no mention of the oats. We have previously reviewed the portion of the answer upon which the defendant relies. Reverting to the quoted language it will be observed that the answer does not allege that the parties adjusted their claims to the oats, but contents itself with the recital that the stipulation ''was entered into and filed as a full and complete settlement of the said action between George Havill and the plaintiff herein.'' Ordinarily the word ''action'' denotes the rights asserted in the complaint, and since the complaint of Havill against Pederson and Tallman was upon an account and was not concerned with the oats it would seem clear that the stipulation for its dismissal did not affect the claim of Tallman to the oats. We are of the opinion that the demurrer should have been sustained. However, the evidence is before us and we have read it carefully. From the manner in which the introduction of the testimony was conducted it is possible that the parties may have understood that the words ''a full and complete settlement of the said action between George Havill and the plaintiff herein'' included a charge that the parties adjusted not only the demand asserted in the complaint but also the collateral matter arising out

of the attachment of the oats; we shall therefore examine the facts which the defendant relies upon. April 14, 1928, Mr. Lindas, as attorney for Havill in the action of *Havill v. Pederson and Tallman,* wrote to the latter's attorney: "we shall ask the court to dismiss the case as to your client Tallman. * * *" Thereupon Tallman's attorney, Mr. Cooper, forwarded a stipulation to Lindas which recited that the action should be dismissed as to Tallman, that he should recover his costs, and that the oats under attachment should be released. Three weeks after his receipt of this proposed stipulation Lindas advised Cooper: "we have decided that while we are willing to stipulate for a dismissal of the case against Mr. Tallman we are not satisfied to release the attachment. In other words, we feel that the oats belong to Mr. Pederson. We have taken judgment against Mr. Pederson and we have ordered an execution with the request that these oats be offered for sale as Mr. Pederson's property." This letter closed with a suggestion that Cooper demand a sheriff's jury to determine the ownership of the oats. The following day Cooper prepared and served the claim of ownership on behalf of Tallman, which we have previously mentioned. Subsequently the oats were sold upon the execution sale to McIntyre and still later Cooper inquired of Lindas concerning his willingness to sign the proposed stipulation for the dismissal of the action of *Havill v. Pederson and Tallman.* Lindas replied that he could not sign the stipulation "because the conditions are changed" and because it provided that Tallman should have his costs. It will be recalled that the proposed stipulation provided that the oats seized under the attachment should be released, and also that after this instrument was drawn the exe-

cution sale had taken place. When Cooper was advised that the sale had been made he struck out the provision for the release of the attachment, and for the recovery of costs, and thereupon both attorneys signed the stipulation. We quote its contents as follows:

"It is hereby stipulated by and between W. L. Mulvey and B. F. Lindas, attorneys for the plaintiff, and W. J. Cooper, attorney for the defendant C. P. Tallman, in the above entitled action, that the said action be dismissed as to the defendant C. P. Tallman with prejudice. It is understood that this stipulation does not affect the right of the plaintiff to take a default judgment against the codefendant H. M. Pederson."

■ We fail to find in the above circumstances anything which would warrant a conclusion that when the attorneys signed the stipulation they agreed that Tallman had no interest in the oats. It seems clear from the allegations of the answer, from the written instruments and from the testimony of Lindas that the stipulation provided for nothing more than a dismissal as to Tallman of the action which Havill had instituted against him. In fact, the defendant does not argue directly to the contrary, but seems to believe that somehow the combination of Tallman's failure to deposit the jury fee, and Cooper's execution of the stipulation created an estoppel which now prevents Tallman from claiming ownership of the oats. The pleading is insufficient to allege an estoppel and the facts create none. It is our opinion that the demurrer should have been sustained to the new matter alleged in the answer, and further that the evidence was insufficient to justify a conclusion that the parties had agreed that Tallman had no interest in the oats. This error, we believe, was material and warrants a reversal because the pleaded facts were received in evidence and were commented upon by the instructions.

██ Respondents' brief requests us to enter judgment in this court in his favor by virtue of art. VII, § 3c, Constitution of Oregon. While the conclusions above announced dispose of the new matter alleged in the answer, nevertheless the issue of the ownership of the oats remains. The complaint avers plaintiff's ownership, and the answer denies it. If the plaintiff's testimony is believed the crop of oats growing upon the 60 acres was not sold to Pederson when he purchased the land. The defendant seems to believe that Tallman and Pederson neglected to do some necessary thing to prevent title to the crop from passing to Pederson when he bought the land. Merely because Pederson purchased the land it was not essential that he must also buy the crop. The law permitted the parties to bargain in regard to either or both. However, since a growing crop is regarded as a part of the soil a deed to the land conveys the crop to the vendee as a part of the real property unless the same is reserved by the vendor in the deed: *Estep v. Bailey,* 94 Or. 59 (185 P. 227). When the parties, in some appropriate manner, exempt from the conveyance the crop and reserve its ownership to the grantor, the courts give effect to their action: *Estep v. Bailey,* supra; *Jones v. Adams,* 37 Or. 473 (59 P. 811, 62 P. 16, 50 L. R. A. 388, 82 Am. St. Rep. 766); *Broders v. Bohannon,* 30 Or. 599 (48 P. 692); *Fox v. McKinney,* 9 Or. 493. In our present case when the agreement was effected whereby Pederson bought the land and Tallman retained the crop no writing was signed. Later the crop was harvested, the oats were threshed, two-thirds were deposited in a barn for Tallman and he thereupon removed a part of them. Still later a written document, which contained the covenants regulating the sale of the land, was prepared and executed by vendor and pur-

chaser. When this document was signed the crop had become personal property and therefore mention of it was properly omitted from the instrument. These methods, which the parties selected for giving expression to their agreements, were entirely consonant with reservation in the plaintiff of title to the crop. If the plaintiff's testimony is believed the title to the oats never passed out of him into Pederson. But, the record contains some evidence which disputes the plaintiff's title; for instance the defendant relied upon the presumption that Pederson was the owner of the oats arising from the fact that they were found in a barn owned by Pederson upon land of which he was the vendee. The defendant also contended that Tallman had removed his oats from the premises before the sheriff levied the writ, and that therefore the oats seized were the one-third belonging to Pederson. Such being the condition of the proof we refrain from making a finding upon this issue.

Other assignments of error are argued in the briefs, but since the alleged errors upon which they are predicated are not likely to reoccur upon the new trial we deem it unnecessary to express our consideration of them. It follows that the judgment of the circuit court is reversed and that the cause is remanded to that tribunal.

Coshow. C. J.. and Rand J.. concur.

McBride, J., absent.