Submitted on remand from the Oregon Supreme
Court April 7, affirmed August 31, 1981

FALK et ux,
*Plaintiffs,*
*v.*
AMSBERRY et ux,
*Defendants.*
AMSBERRY et ux,
*Third Party Plaintiffs-Respondents,*
*v.*
LARSEN,
*Third Party Defendant-Appellant,*

(No. 74-5251, CA 14025)

633 P2d 799

David Brewer, Eugene, argued the cause and filed the briefs for appellant. With him on the briefs was Lombard, Gardner, Honsowetz, Johnson & Brewer, Eugene.

Michael W. Doyle, Eugene, argued the cause and filed the briefs for respondents. With him on the briefs was Bick & Monte, P. C., Eugene.

Before Joseph, Chief Judge, and Thornton and Young, Judges.

YOUNG, J.

## YOUNG, J.

Third party defendant (Larsen) appeals from a judgment entered against him and in favor of third party plaintiffs (Amsberry) in this action for indemnity. For several years plaintiffs in the original action (Falk) leased farmland from Larsen to grow grass seed. It was an oral lease with cash rent to be paid at the end of each crop year on October 1. The lease was to terminate if Larsen sold the land.

In August, 1972, Amsberry began to negotiate with Larsen to purchase the land, and a contract of sale was executed on November 15, 1972. Prior to the sale and during the negotiations, Falk reseeded the annual grass, put weed killer on the perennial grass and fertilized all grasses, but subsequently failed to obtain a continued lease of the land under the Amsberry ownership. Amsberry harvested and sold the grass seed crop after taking possession of the land as purchasers. Falk, after appeal to the Supreme Court in *Falk v. Amsberry,* 279 Or 417, 569 P2d 558 (1977), obtained a judgment against Amsberry under ORS 91.310 (farm tenant's right to emblements). The recovery was based on the fact that the oral lease between Larsen and Falk had not been terminated at the end of the 1972 crop year. No notice of termination had been given. The Supreme Court found that the lease was thereby renewed for another year, subject to termination by a sale of the property. 279 Or at 421. The lease terminated when Amsberry purchased the property, and, because the tenancy ended by the occurrence of an uncertain event, Falk was entitled to emblements under ORS 91.310.

On remand from the Supreme Court Amsberry, in a trial to the court, recovered a judgment against Larsen on their third party complaint seeking indemnity for the amount of the judgment entered against them on Falk's original complaint.

On appeal to this court, Larsen presented three assignments of error, contending: (1) that the third party complaint failed to state a cause of action for indemnity; (2) that the evidence was insufficient to establish a duty to indemnify; and (3) that he was not liable for indemnity because the 1973 crop was "constructively severed" from

the land prior to consummation of the 1972 land sale. In a prior opinion, we affirmed the judgment after reviewing the first assignment of error. We held the remaining two assignments of error had not been preserved for appeal. *Falk v. Amsberry,* 46 Or App 565, 612 P2d 328 (1980). The Supreme Court accepted review and held that the second and third assignments of error had been adequately preserved. *Falk v. Amsberry,* 290 Or 839, 626 P2d 362 (1981). We address those issues now on remand.

■     In our prior decision we held that the allegation in the complaint of a provision in the contract of sale from Larsen to Amsberry granting Amsberry possession of the property without reservation of the 1973 grass seed crop was sufficient to allege a covenant against encumbrances. The complaint thereby stated a cause of action for indemnity. It follows that sufficient evidence of a duty to indemnify would exist upon proof of the contract.

■     Larsen argues that the contract was not proved because it was not offered in evidence. We find, however, that it was admitted by the pleadings. The third party complaint alleged:

> "On or about November 15, 1972, pursuant to a land sale contract bearing the date October 27, 1972, Norman L. Larsen sold Larry Amsberry and Nancy D. Amsberry the 76 acres of the above-described property bearing grass or seed, without reserving from the sale the crop planted thereon. A copy of the land sale contract is attached hereto as Exhibit A and made a part hereof by reference."

Larsen's amended answer specifically "[a]dmits that a Land Sale Contract was executed between the parties on or about November 15, 1972 * * *." Larsen contends that this allegation did not admit the particular contract attached to Amsberrys' complaint, because he admitted only that *a* contract, not *the* contract, had been executed. However, as an affirmative defense Larsen alleged, in part:

> "The Oregon Supreme Court has held that this Third Party Defendant was not the owner of the crops referred to in Plaintiffs' Complaint at the time *the* Land Sale Contract of November 15, 1972, between Third Party Plaintiffs and Third Party Defendant Larsen was executed * * *." (Emphasis added.)

Two other references are made in Larsen's answer to "the said contract." There is no indication of the existence of any contract other than the one alleged by Amsberry. At trial that contract was marked as an exhibit and repeated references were made to it without objection. Larsen has admitted the execution of the agreement, and that admission is binding. *Brookfield Co. v. Mart,* 139 Or 495, 4 P2d 311, 10 P2d 594 (1932); *Interior Warehouse Co. v. Dunn,* 80 Or 528, 157 P 806 (1916).

■     Larsen next contends that the grass seed crop was "constructively severed" from the real property prior to consummation of the land sale and that, because the crop thus became personal property, the covenant against encumbrances was not breached.[1]

■     In some situations growing crops may be considered real property, while in others they are considered personalty; the choice may depend upon the relationship of the parties to each other. *See generally,* 1 Thompson on Real Property §116 (J. Grimes ed., 1980 replacement); Restatement of Property, §8, comment b. For example, as between the vendor of land and the purchaser, a conveyance of the land will convey the growing crop to the purchaser as part of the real property, unless the crop was reserved by the vendor. *Tallman v. Havill,* 133 Or 407, 291 P 387 (1930); *Estep v. Bailey,* 94 Or 59, 65, 185 P 227 (1919). The same is true of a purchase under a contract for the sale of land on deferred payments where the purchaser has the right of possession, *First Nat. Bank v. Montana Emporium Co.,* 59 Mont 584, 197 P 994 (1921), or a purchase at a

---

[1] Constructive severance is little more than a fictitious rationale by which articles annexed to land are treated as personal property, primarily to accord with various parties' intentions. In *Pepin v. City of North Bend,* 198 F Supp 644, 649 (D Or 1961), the court found the requisite intention to be an intention by the parties that the property be treated as personalty and not necessarily a fixed intention to remove the annexed article from the land:

"* * * An intent to remove would strongly evidence a desire that the attributes of personalty should attach to the article, but a definite intention to sever the article from the land is not a *sine qua non* of constructive severance. 'Constructive' severance implies a situation in which an item of property is deemed by the law to have been severed from the land, even though it has not been severed as a matter of physical fact. But all that this so-called 'severance' signifies is that the thing in question is thereafter to be regarded in law as personal property. This same result manifestly may be accomplished by agreement of the parties interested."

foreclosure sale with right of possession. *Jones v. Adams,* 37 Or 473, 59 P 811, 62 P 1616 (1900). Conversely, as between landlord and tenant, crops planted during the tenancy are not part of the freehold but are the personal property of the tenant, absent some agreement to the contrary. *Estep v. Bailey, supra,* 94 Or at 65; *see also, Brown v. Jones et al,* 130 Or 424, 278 P 981 (1929).

■ ■ If an event is found to be a constructive severance, it will not convert real property into personalty with regard to all relationships. The severance is only effective as to those persons who have notice of it. *Pepin v. City of North Bend,* 198 F Supp 644, 649 (D Or 1961); *Blake-McFall Co. v. Wilson,* 98 Or 626, 645, 193 P 902 (1921); *Rudy-Patrick Co. v. Dela Costa Farming Co.,* 16 Wash App 911, 557 P2d 869 (1977). Assuming the doctrine of constructive severance applies in Oregon to growing crops,[2] we conclude that, if a severance occurred, as a matter of law it was not effective

---

[2] Oregon cases create some confusion with regard to the application of constructive severance to growing crops. In *Jones v. Adams, supra,* the conflict was between a purchaser at a foreclosure sale and a chattel mortgagee whose mortgage was subsequent in time to the foreclosed mortgage but prior in time to the foreclosure. The court said the doctrine of constructive severance did not "commend itself" as a better view and held the test to be "whether there has been an actual severance." 37 Or at 476. A contrary statement is found in *Brown v. Jones et al, supra,* where the court, without mentioning *Jones v. Adams,* said:

"Growing crops on leased lands, crops embraced in chattel mortgages and crops levied upon execution and sold, are usually considered, we think, as constructively, or in legal contemplation, severed from the freehold." 130 Or at 436.

Finally, in *Paullus v. Yarbrough et ux,* 219 Or 611, 347 P2d 620 (1969), the issue was whether a sale of timber was a sale of personal property or real property. The court analyzed the issue by applying ORS 75.760, the section of the Uniform Sales Act defining "goods." *See* ORS 72.1050, 72.1070 (Uniform Commercial Code.) The court noted that some states had not applied the statutory definition to resolve similar issues because they had recognized "the fiction of constructive severance" and could reach a conclusion based on that concept. The court did not include itself in the group of courts which had adopted the fiction. However, by analyzing the issue under the Sales Act rather than explicitly adopting constructive severance, the court did not foreclose application of a constructive severance rationale in other situations. The Sales Act and the present UCC sections do not cover all transactions to which a constructive severance might be said to have occurred.

In any event, constructive severance has been a rationale used to reach certain results in the area of fixtures. *See, e.g., Blake-McFall Co. v. Wilson, supra; see generally, Pepin v. City of North Bend, supra,* summarizing prior Oregon case law. We do not see why it would apply to analyzing cases involving fixtures and not to those involving growing crops.

as between Amsberry and Larsen. The 1973 crop was constructively severed, if at all, by continuance of the lease between Falk and Larsen through the 1973 crop year (subject only to termination on sale of the property). That occurred when Larsen failed to give notice of termination to Falk prior to October 1, 1972, the end of the 1972 crop year. At trial, Falk testified that on one occasion prior to October 1, 1972, he had told Mr. Amsberry that he (Falk) had already reseeded the annual crop. That is not notice of a severance. Amsberry was never told the lease had been extended. To the contrary, they sought and received assurances that it had not been extended. On November 12, 1972, three days prior to execution of the land sale contract, Larsen signed a statement that the verbal lease agreement between himself and Falk "has not been extended verbally nor in writing beyond the 1972 crop year." Larsen testified at trial that he knew Amsberry wanted the property free and clear of any lease to Falk. Larsen also stated that when he signed the land sale contract, it was his intent that Amsberry receive the property free of any interest of Falk.

As between Larsen and Amsberry, the sale of the land gave Amsberry possession, including possession of the growing crop as real property. Falk's statutory rights to emblements, ORS 91.310, diminished Amsberry's rights in the property and were an encumbrance thereon. *Estep v. Bailey, supra,* 94 Or at 64. For breach of the covenant against encumbrances, Amsberry is entitled to be indemnified.

Affirmed.