Argued and submitted March 12, reversed and remanded May 1, 1996

Robert TAGGART
and Betty Taggart, Shirley Christiansen and Carol Daks,
*Appellants,*

*v.*

Paul F. BATTAGLIA
dba Battaglia Ranch,
*Respondent,*

*and*

John M. CASPAR,
Personal Representative of the
Estate of Hilda H. Caspar,
*Defendant.*

(94P1104; CA A89233)

915 P2d 1001

Norman R. Hill argued the cause for appellants. With him on the briefs were Norman F. Webb and Webb & Martinis.

Gregory B. Snook argued the cause for respondent. With him on the brief were Stephen C. Voorhees and Kilmer, Voorhees & Laurick, P.C.

Before Deits, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

## LEESON, J.

In this action for timber trespass, plaintiffs appeal from the partial summary judgment, ORCP 67 B, entered in favor of defendant. Because we conclude that defendant is not entitled to judgment as a matter of law, ORCP 47 C, we reverse and remand.

The property that is the subject of this dispute was owned by Hilda Caspar, who died before the occurrence of the events that led to this action. On January 14, 1981, Caspar leased the property to defendant's predecessors in interest "for agricultural purposes only, including the planting, growing and harvesting of Christmas trees thereon." The lease eventually was assigned to defendant, a Christmas tree merchant in California. The lease was to run for an initial 10-year term through January 30, 1991, at which time Caspar could elect to terminate it by giving notice to the lessee at least 10 days before January 30, 1991. Otherwise, Caspar could terminate the lease on January 30 of any subsequent year by giving notice no fewer than 30 days in advance. Under the lease agreement, Caspar also could immediately terminate the lease and reenter the premises without notice at any time if the lessee defaulted on rent payments. Defendant made no lease payments after December 1989, but neither Caspar, nor her personal representative after her death, gave notice or terminated the lease.

In late 1992, plaintiffs negotiated the purchase of the property from the personal representative of Caspar's estate. A preliminary title report revealed the existence of an unrecorded lease and its assignment to defendant. In order to clear that encumbrance from the title, the escrow agent asked defendant if he had any continuing interest in the property. Defendant disavowed any further interest and agreed to execute a quitclaim deed, which he signed on January 29, 1993. The quitclaim deed used the permissive statutory form in ORS 93.865 to release to Caspar's personal representative "all [defendant's] right, title, and interest, if any, in that real property," but also stated that "[t]his deed is being given to remove any interest created by the unrecorded lease." On February 5, 1993, plaintiffs executed a land sale

contract with Caspar's estate and took possession of the property.

According to defendant, after he had quitclaimed his property rights, he continued to fertilize, spray, shape and tag the trees on the property in preparation for harvest. Plaintiffs testified that they did not observe any such activities and that the random placement of the trees on the property gave no indication that they were part of a commercial operation. At the beginning of the Christmas tree harvest season in November 1993, defendant entered the property and cut more than 190 of the trees that had been growing there. Plaintiffs, believing that the trees added considerable aesthetic value to the property and were included in the purchase price, brought this action against defendant for timber trespass.

Defendant moved for summary judgment on the ground that he was entitled to enter the property and harvest the growing trees after termination of the lease under the doctrine of emblements, codified in ORS 91.230. The trial court concluded that the quitclaim deed terminated the lease. However, relying on *Falk v. Amsberry*, 279 Or 417, 569 P2d 558 (1977), it held that defendant was "entitled to enter the land and harvest the trees" and that the "quit claim deed did not terminate the right of [defendant] to harvest crops or emblements." Accordingly, the court ruled that defendant was entitled to judgment as a matter of law. Plaintiffs assign error to that ruling.

■■ ORS 91.230 codifies the ancient right of a farm tenant to emblements:

> "When the leasing or occupation is for the purpose of farming or agriculture, the tenant or person in possession shall, after the termination of the lease or occupancy, have free access to the premises to cultivate and harvest or gather any crop or produce of the soil planted or sown by the tenant or person in possession before the service of notice to quit."

In general terms, the doctrine of emblements protects the rights of farm tenants to cultivate and harvest crops that they planted during their leasehold but which remain unharvested at the termination of the tenancy. *Simpson v.*

*McCormmach*, 125 Or App 603, 605, 866 P2d 489, *rev den* 318 Or 459 (1994). Application of the doctrine, however, has been limited to those situations in which the term of the lease is uncertain. *Hostetler v. Eccles*, 112 Or 572, 579, 230 P 549 (1924). Additionally, termination of a lease by a tenant's own act or termination by the landlord following a tenant's default forfeits the right to emblements. *Francis v. Schallberger*, 137 Or 529, 537, 3 P2d 530 (1931).

■     Here, plaintiffs argue that defendant was not entitled to emblements rights, because he "was in default for failing to pay rent and voluntarily terminated his own lease by signing the Quitclaim Deed." Defendant responds that, although he was in default on his rental payments, plaintiffs "did *not* exercise the option granted by the lease to re-take the property" and thus did not terminate the lease in response to his default. (Emphasis defendant's.) Therefore, he argues, relying on *Falk*, "the lease was one of uncertain duration, and * * * he was entitled under ORS 91.230 to enter upon the property *after* the termination and harvest the previously planted Christmas trees." (Emphasis defendant's.)

In *Falk*, the plaintiffs were tenant grass seed farmers under a lease that called for rental payments at the end of each crop year. The lease was to terminate if the lessor sold the land. The plaintiffs had reseeded and cultivated the fields but did not make timely payment of their scheduled annual rent. The lessor sold the land to the defendants, who harvested and sold the grass seed crop. The plaintiffs brought an action for damages based on the emblements statute. In reversing the trial court judgment for the defendants, the Supreme Court acknowledged the rule in *Francis*—that termination of the lease by the tenant's breach works a forfeiture of the right to emblements—but held that, because the lessor had not exercised his option to terminate the lease, the tenancy was terminated by the sale of the land, an uncertain event, and that the plaintiffs' rights to emblements therefore was preserved. *Falk*, 279 Or at 422-23.

■     In this case, had defendant not quitclaimed his interest in the property, *Falk* might be dispositive. However, defendant freely executed the quitclaim deed at the request

of plaintiffs' escrow agent.[1] Doing so indisputably terminated the lease. Where, as here, a tenant terminates his interest in property by his own act, the doctrine of emblements does not preserve his right to unharvested crops growing on the land. *Francis*, 137 Or at 537.

■ Defendant does not dispute that rule, but argues that his "execution of the quitclaim deed does not fit the doctrine of 'voluntary surrender' so as to terminate his emblement rights."[2] He reasons that he did not offer to execute a quitclaim deed, but was "asked on plaintiffs' behalf" to do so, and that Caspar's personal representative could have acted at any time to terminate the lease for default had he resisted the request. Those facts, he contends, transformed his willing execution of the quitclaim deed into a termination caused by notice of the sale, a termination that was "by 'the act of the landlord' in every meaningful way."

We are not persuaded by defendant's contention that, because he did not initiate the quitclaim deed transaction, his conveyance was not voluntary. Neither are we persuaded by his argument that "resisting the request [to execute the quitclaim deed] was not a reasonable option," because his refusal would have prompted Caspar's personal representative to take action to terminate the lease for default. According to defendant, by executing the quitclaim deed at lessor's request, he retained emblements rights to which he would not have been entitled if lessor had terminated the lease in response to defendant's default. By that logic, defendant seeks to deprive lessor of the benefits lessor would have obtained in an action against defendant for default. The doctrine of emblements is not a trap for the unwary lessor who allows his tenant in default to voluntarily quit by executing a quitclaim deed rather than forcibly repossessing the premises.

---

[1] There are other differences between the two cases as well. For example, in this case, the lease agreement did not terminate automatically by the sale of the property and, unlike the oral agreement in *Falk*, also contains a provision that governs the lessor's remedy for default. It is not necessary to address the significance of those differences.

[2] Defendant argues that plaintiffs failed to preserve for review the issue of voluntary surrender by execution of the quitclaim deed. We have reviewed the record and find defendant's argument to be without merit.

Defendant's final argument against voluntary surrender is that the quitclaim deed, by its terms, did not terminate his right to emblements. In his view, the deed terminated only his " 'right, title and interest' *in the subject real property*" (emphasis defendant's) by terminating the lease, but it "could not purport to terminate his right to emblements, which is a right to *personalty*" (emphasis defendant's) that arises from the statute.

Whether growing crops are considered personalty or real property depends on the relationship between the parties. *Falk v. Amsberry*, 53 Or App 735, 739, 633 P2d 799 (1981). As between a landlord and a tenant, crops planted during the tenancy are the personal property of the tenant, absent some agreement to the contrary. *Id.* at 740. As between the vendor and vendee of land, however, conveyance of the land also conveys the growing crop as part of the real property, unless the deed reserves ownership to the vendor. *Id.* at 739 (citing *Tallman v. Havill*, 133 Or 407, 291 P 387 (1930)). In this case, defendant was Caspar's tenant under the lease, but he was also the vendor to Caspar's personal representative under the quitclaim deed. That deed does not reserve to defendant ownership of the growing trees and thus conveys the trees as part of the real property. Moreover, regarding defendant's right as a tenant to the growing trees as personalty, the quitclaim deed is an agreement to the contrary.

In sum, as a matter of law, defendant's execution of the quitclaim deed terminated all his rights in the subject property, including his right to emblements in the form of unharvested Christmas trees. Consequently, the trial court erred in granting partial summary judgment to defendant.

Reversed and remanded.