JOHN WOODCOCK and another *vs.* FRANK A. CARLSON.

November 1, 1889.

Landlord and Tenant—Title to Crops raised by Tenant pending Appeal from Judgment of Eviction.—In case of a lease of a farm containing a covenant for the payment of rent by the lessee, but no provision for a re-entry for a breach of the covenant, the lessor, claiming that certain rent was due on the lease, brought an action, under Gen. St. 1878, *c.* 84, against the lessee, to recover possession of the premises, which resulted in a judgment in his favor, from which the lessee appealed to the district court, giving the stay appeal-bond required by statute, and remaining in possession. The trial of the appeal in the district court also resulted in judgment in favor of the lessor for the restitution of the premises. After the commencement of the action, but before judgment in the district court, the lessee, while still in possession of the premises, harvested and removed therefrom a crop of grain sown by himself. *Held*, that the grain belonged to the lessee, and not to the lessor.

Appeal by plaintiffs from a judgment on the pleadings, entered in the district court for Goodhue county, pursuant to an order of *McCluer*, J.

*J. C. McClure*, for appellants.

*O. M. Hall*, for respondent.

MITCHELL, J. We think it was error to order judgment for defendant on the pleadings, although it is not surprising that the court below should have been somewhat confused by the mass of immaterial history, or, at best, mere evidence, by which counsel have extended the pleadings, in a simple action of trover and conversion, to the length of nearly 60 folios. The action is for damages for the wrongful taking and conversion of a number of sacks of grain, which the plaintiffs claim by virtue of a chattel mortgage executed by one Duryea, in June, 1886, while the property was still a growing crop. The wrongful taking complained of was the seizure of the grain, after it was harvested and threshed, in August, 1886, by defendant, as sheriff, on a writ of attachment in a suit by one Raymond against Duryea for the recovery of money. The defences of the sheriff are,

in legal effect: *First,* that he was justified in seizing it as Duryea's property, because plaintiffs' mortgage was fraudulent and void as to creditors of the mortgagor; and, *second,* that at the time he seized it it was in fact the property, not of Duryea, but of Greenwood.

As to the first, it is enough to say that it is not admitted in the pleadings either that the mortgage was fraudulent, or that Greenwood was a creditor of Duryea as respects the claim upon which the attachment was issued. Hence, clearly, defendant was not entitled to judgment on the pleadings on the first ground.

The short facts bearing upon the second defence are that Greenwood leased to Duryea the farm on which this grain was grown for a term of five years, five and one-half months, from July 15, 1885, at a stipulated annual rent of $350, payable quarter-yearly. It does not appear that this lease contained any conditions or any covenant other than for the payment of rent. Neither does it appear that there was any provision in it that a default in payment of rent should work any forfeiture of the lease, or give the lessor a right to re-enter. In May, 1886, Greenwood commenced in a justice's court an action of unlawful detainer against Duryea to recover possession of the premises, in which, on June 11, 1886, he obtained judgment of restitution, from which, on June 17th, Duryea appealed to the district court, giving the stay appeal-bond required by statute, and remaining in possession of the premises. This appeal was tried in the district court, on January 20, 1887, and resulted again in judgment in favor of Greenwood. It nowhere appears on what ground this action was brought, or the judgment of restitution rendered, unless it may be inferred, from a statement in the complaint that Greenwood brought the action, claiming that there was $87.50 due on the lease, that it was brought for default in payment of rent. Neither does it appear (which perhaps is immaterial) whether the action was brought before or after the grain was sown; but, from the natural course of the seasons, it is to be assumed that the action was commenced before, but the judgment of restitution rendered after, the grain was harvested. It appears that in November, 1886, and pending the appeal, Greenwood entered and ejected Duryea, and took possession of the premises; but as this was apparently without any legal right, and as

it was after the grain was severed and removed from the farm, it is unimportant in the present case.

The contention of defendant is that, upon these facts, the commencement by Greenwood, the lessor, of the action to recover possession of the demised premises terminated the estate of Duryea, the tenant, and was equivalent to a re-entry, and that the judgment of restitution subsequently rendered therein related back to the date of the action, so that all crops severed and removed from the land in the intermediate time were the property of the landlord and not of the tenant. Assuming the law to be as defendant claims, it may at least admit of doubt whether it can avail him. Conceding that, as between lessor and lessee, the grain belonged to the former, yet, as against all the rest of the world, it would belong to the tenant. Greenwood, the lessor, is not here calling in question Duryea's title, nor does it appear that he ever has or ever will, as owner of the land, assert any claim to the property. On the contrary, it appears from the pleadings that he has asserted rights, and resorted to remedies, entirely inconsistent with any such claim. Defendant took the property on the writ from the possession of Duryea, plaintiffs' mortgagor, and as his property; and it would seem that it is only on this ground, if any, that he can, as against Duryea or those claiming under him, justify the taking and conversion.

But, waiving this point, we are clear that, upon the facts stated, even as between Greenwood and Duryea, the grain was the property of the latter. It must be remembered that the right to re-enter for non-payment of rent is not incident to the estate of the lessor at common law, but must be reserved in the lease. Unless a lease contained an express provision to that effect, a default in the covenant to pay rent would not work a forfeiture of the lease, or give the landlord the right to re-enter; but he was put to his remedy by distress or action to collect his rent. Hence the custom to insert in every well-drawn lease a clause of re-entry for a breach of its covenants or conditions. Originally the method of resuming possession in such cases was by actual entry by the lessor, and eviction of the tenant without action. Under such a practice no such question as is here presented could arise; for, according to a familiar doctrine, the lease having been ter-

minated by the act of the tenant, he would not be entitled to the out-going crop. This method of actual entry being in practice inconvenient and objectionable, a statutory substitute was provided, to the effect that where, in case of the failure of the tenant to pay rent, *the landlord has a subsisting right to re-enter for such failure,* he may bring an action to recover possession of the property, and such action is equivalent to a re-entry. Gen. St. 1878, *c.* 75, § 33. It will be observed that this statute does not assume to give a right of re-entry where such right does not already exist according to the terms of the lease, but merely provides that where the right is already subsisting the commencement of an action shall be equivalent to an actual entry. See *Jackson* v. *Hogeboom,* 11 John. 163.

So far as we discover, upon examination of the authorities, whatever has been said in any of them tending to support the present contention of defendant has reference to cases where the lease contains express provisions for a right of re-entry in case of a breach of its covenants or conditions, and where the lessor was asserting that right by action, which the statute made equivalent to an actual entry. See *Samson* v. *Rose,* 65 N. Y. 411; *Dayton* v. *Vandoozer,* 39 Mich. 749; *Stancer* v. *Roe,* 55 Mich. 169, (20 N. W. Rep. 889.) And even as applied to such cases it will be found that the whole doctrine rests on a surprisingly small foundation of authority. For example, three cases usually cited in its support are *Doe* v. *Witherwick,* 3 Bing. 11, (also reported in 10 Moore, 267;) *Hodgson* v. *Gascoigne,* 5 Barn. & Ald. 88; and *Lane* v. *King,* 8 Wend. 584. In the first case the court merely refused, on considerations of public policy, to grant a rule, in the ejectment suit, on the landlord to pay over to the tenant the value of the crops, holding *that the tenant must assert his right, if he had any, by action.* In the second case all that was decided was that the sheriff was not liable to an execution creditor of the tenant for not selling a growing crop, which he had previously levied on, *but which was still standing, and unsevered from the land, when the landlord was put into possession.* In the third case, which was one between the purchaser at a mortgage sale and the tenant of the mortgagor under a lease subsequent to the mortgage, the fact was *that, at the time of the entry of the purchaser, the crop was still growing and,*

v.41m—35

*unripe.*  Indeed the entire theory that the judgment in an action to recover possession of land relates back to, and takes effect as of, the date of the commencement of the action, so as to vest in the plaintiff the property in all crops severed and removed from the premises subsequently to that date, is based on a legal fiction.  From the same premise, and by the same line of reasoning, some courts have deduced the same result in the case of a disseisor whose entry was unlawful; but it is the settled rule in this state that, with respect to crops which are the result wholly of the labor of the disseisor, and which he has severed and removed from the premises while still in possession, the title is in him, and that the sole remedy of the owner of the land is his action for mesne profits.  *Lindsay* v. *Winona & St. Peter R. Co.,* 29 Minn. 411, (13 N. W. Rep. 191.)  It is undoubtedly true that in an action for mesne profits the judgment in the action of ejectment is conclusive that the plaintiff was entitled to the possession from the date of the commencement of the latter action; but it does not necessarily follow from that fact that he is entitled to all the crops grown on and removed from the premises subsequently to that date.  It is difficult to see why, on principle, a more severe rule should be applied against a tenant, who holds over after his term expires, or after he is in default in payment of rent, than is applied to a disseisor whose entry was a wilful trespass.

But, whatever may be the rule where the lease provides for a forfeiture and a right of re-entry in case of a breach of its conditions or covenants, this is not such a case.  The statute (Gen. St. 1878, *c.* 84, § 11) has gone further than the common law, and has given the landlord the right, in any case where the tenant holds over "after any rent becomes due, according to the terms of such lease or agreement," to bring an action to recover possession of the premises.  But while extending this remedy to the landlord, it nowhere provides that the commencement of such an action shall be equivalent to an entry, or work a forfeiture of the lease.  On the contrary, the provisions of the statute are wholly inconsistent with any such theory, and all point to the manifest legislative intent that, for the unlawful withholding of the possession during the pendency of the action, the lessor's sole remedy is the rental value of the prem-

ises. Under section 7 the defendant, in order to obtain an adjournment of the trial, is required to give a bond conditioned for the payment of "all rent which may accrue during the pendency of such action." In case a defendant appeals, he is entitled to a stay of proceedings and to remain in possession, upon giving, as Duryea did in this instance, a bond conditioned for the payment of "all rent and other damages justly accruing to the complainant during the pendency of such appeal." It is immaterial whether this refers to rent, as such, according to the terms of the lease, or the actual rental value of the premises in the nature of damages; for in either case it implies that it is to be the measure of his damages, and its recovery his only remedy for the unlawful withholding of the possession. Certainly the landlord cannot be entitled to rent for the land, and also to all its products; and yet such would seem to be the logical result if defendant's contention be correct. If all the crops raised by the tenant, as the result of his own labor, during the pendency of a protracted and perhaps honestly-contested litigation over the possession, belong to the landlord in case of his success in the suit, then the right of appeal is of less than doubtful value. We do not think the statute contemplates any such thing. Our conclusion therefore is that, upon the facts as disclosed by the pleadings in this case, this grain belonged to Duryea and not to Greenwood.

Judgment **reversed.**