## HENRY SCHUCHARD v. ST. ANTHONY & DAKOTA ELEVATOR COMPANY.[1]

December 7, 1928.

No. 26,936.

[1]Reported in 222 N. W. 292.

*Libby & Harris* and *Houston & Huber,* for appellant.
*Murphy & Johanson,* for respondent.

OLSEN, C.

Appeal by defendant from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

Plaintiff was the owner of a farm of 160 acres in Grant county, this state. In 1919 he mortgaged the land for $4,000 to the Prudential Life Insurance Company, hereinafter referred to as the Prudential company. This mortgage was foreclosed by advertisement and the land bid in by and sold to the Prudential company on July 18, 1924, and it received a proper sheriff's certificate of sale. The time to redeem expired July 18, 1925, and there was no redemption. On August 10, 1925, the Prudential company conveyed the land to one Anthony Anderson by quitclaim deed.

Plaintiff, as owner, leased the land to one George Brown for the farming season or year of 1924 and again for the year 1925 by oral contracts. The contract for 1925 was made in the fall of 1924. Brown had notice of the foreclosure sale when he made this lease. These leases were on a crop-sharing basis, the tenant to furnish seed, produce the crop, and deliver one-third thereof to the

elevator of the defendant, St. Anthony & Dakota Elevator Company, at Charlesville, a short distance from the farm, for the plaintiff as his rent or share of the crop. Under his lease-contract with plaintiff, Brown produced a crop of grain on the land in 1925. He harvested and severed the crop from the land after July 18, but before August 10, that year. He had the grain threshed and delivered one-third thereof to defendant elevator company for the plaintiff under the terms of his lease. Defendant refused to deliver the grain to plaintiff or account to him therefor, and this action was brought to recover for its conversion. Plaintiff had a directed verdict for the value of the grain. Defendant by its answer denies plaintiff's title to the grain and his right to recover therefor, and alleges that Anderson was, at all times subsequent to July 18, 1925, the owner of the grain and of the land. It appears also that Anderson gave the defendant a bond to indemnify it against plaintiff's claim and that he was thereupon paid the value of the grain.

■ The defense that Anderson owned the grain may be first considered. Defendant presented some slight evidence that Anderson negotiated with an agent of the Prudential company about July 12, 1925, for taking over its interest in the land, or sheriff's certificate, and paid money to it for that purpose; that these negotiations resulted in the giving of the quitclaim deed on August 10, 1925; and that Anderson claimed or had a second mortgage on the land. No mortgage was produced, and no contract or agreement of any kind giving Anderson a valid right or title to the land or the crops is shown, except the quitclaim deed of August 10. This deed conveyed no right or title to any crops severed from the land prior to that date. Anderson's agent testified that he went upon the land about July 14, 1925, saw the tenant, Brown, and informed him that he or Anderson claimed to own the land and to be entitled to the owner's share of the crop. This is denied by the tenant but, assuming it to be true, it would not give Anderson any title to the land or crops. There is therefore no evidence to show any title to the grain in Anderson.

It appears that Brown, before he delivered the grain to the elevator company on or about September 10, 1925, learned that Anderson made claim thereto, and that, when delivering the grain, he informed the elevator company that there was such claim and dispute as to the ownership.

■ The more important question here is whether the plaintiff proved ownership of the grain. The two essentials of a cause of action for conversion are property in the plaintiff, either general or special, and a conversion by the defendant. It was therefore incumbent upon the plaintiff to prove his ownership of the grain in order to entitle him to recover.

The question of the ownership of cultivated grain crops growing upon and not severed from land at the time of the expiration of the period for redemption from mortgage and execution sales, under the circumstances here stated, presents difficulties.

Cultivated annual crops, under the common law and under our statutes, are regarded as personalty. Such crops were held to be personal property within the meaning of a statute permitting a chattel mortgage upon any "article of personal property." State v. Williams, 32 Minn. 537, 539, 21 N. W. 746. The distinction between such crops and perennial fruits, bushes and grasses is considered in Sparrow v. Pond, 49 Minn. 412, 52 N. W. 36, 16 L. R. A. 103, 32 A. S. R. 571. Cultivated annual crops are by statute made subject to levy and sale under execution, G. S. 1923, § 9432, the sale in such case being permitted when the crops are ripe and fit for harvesting.

In actions for injury to such crops, the measure of damages is the value of the growing crop as personalty, and not the diminution in the value of the land. Lommeland v. St. P. M. & M. Ry. Co. 35 Minn. 412, 29 N. W. 119; Burnett v. G. N. Ry. Co. 76 Minn. 461, 79 N. W. 523. Such crops may be sold or assigned while growing. Potts v. Newell, 22 Minn. 561.

A trespasser raising such crops has title thereto if he gathers them before he is dispossessed. Lindsay v. W. & St. P. R. Co. 29 Minn. 411, 13 N. W. 191, 43 Am. R. 228; Nash v. Sullivan, 32 Minn. 189, 20 N. W. 144. Under G. S. 1923, § 9569, the occupant of lands,

in case of ejection, is entitled to crops grown thereon by him and has the right to enter upon and remove them even after he is evicted. Bloemendal v. Albrecht, 79 Minn. 304, 82 N. W. 585. This section of the statute does not apply to a mere trespasser however, but only to one occupying land under a claim of right while the crops are sown and produced.

The rule that crops raised and harvested by a trespasser, a disseisor or tenant holding over, or mortgagor holding over after the expiration of the time for redemption from foreclosure sale, belong to him who so raises and harvests them, is recognized in Woodcock v. Carlson, 41 Minn. 542, 546, 43 N. W. 479, and in Lake v. Lund, 92 Minn. 280, 99 N. W. 884. In Graceville State Bank v. Hofschild, 166 Minn. 58, 206 N. W. 948, the interest of the occupant in the crops was held terminated because he did not retain possession. In Aultman & Taylor Co. v. O'Dowd, 73 Minn. 58, 60, 75 N. W. 756, 72 A. S. R. 603, it is stated:

"The question then is for the first time squarely presented in this court, as to who has the superior right to the crops sown by a tenant before the expiration of the time for redemption,—the purchaser at the foreclosure sale, or the lessee who remains in possession of the premises after such sale and who cares for the crops, harvests them, and carries them off the premises before the owner of the land takes possession thereof."

The decision is that the tenant had the superior right to the crops, and his landlord, the former owner of the land, was entitled to receive his share thereof from the tenant. The two later cases, McCray v. Superannuated Fund, 167 Minn. 295, 208 N. W. 1001, and Hensler v. Warneka, 169 Minn. 468, 211 N. W. 680, do not appear to modify the O'Dowd case, 73 Minn. 58, 75 N. W. 756, 72 A. S. R. 603. These later decisions are based upon the fact that in each case the tenant had attorned to the holder of the sheriff's certificate, so that at the expiration of the redemption period the tenant ceased to be tenant of the prior owner and became tenant of the new owner of the land. The effect was that the holder of the sheriff's certificate in each case became invested with the possession of the

land at the expiration of the period for redemption, and crops growing upon the land at that time became his crops, subject to his agreement with the tenant. Designating this as an attornment is of little importance. The important fact is that in those cases the holder of the sheriff's certificate took possession of the land, by tenant, at the expiration of the period for redemption and while the crops were growing thereon and not severed therefrom. The O'Dowd case, 73 Minn. 58, 75 N. W. 756, 72 A. S. R. 603, is referred to in the McCray case, 167 Minn. 295, 208 N. W. 1001, as not applicable for that reason.

It may be conceded that the common law doctrine of attornment is not in force in this state and generally not in this country. Jones v. Rigby, 41 Minn. 530, 43 N. W. 390. But attornment, as a fact and an incident having important effects upon the rights of landlord and tenant and upon others dealing with the property leased, remains and is recognized. It is in that sense that the term is used here, and in McCray v. Superannuated Fund, 167 Minn. 295, 208 N. W. 1001, and Hensler v. Warneka, 169 Minn. 468, 211 N. W. 680. The tenant may attorn to one having a superior title and need not await eviction before so doing. Johnson v. Sackrison, 78 Minn. 107, 80 N. W. 858. An attornment to another without the consent of the landlord generally does not affect the landlord's possession. Trimble v. Lake Superior & P. S. Co. 99 Minn. 11, 108 N. W. 867; Hanson v. Sommers, 105 Minn. 434, 117 N. W. 842. That rule is modified or limited by the McCray case, 167 Minn. 295, 208 N. W. 1001. So the fact of attornment and rights flowing therefrom is well recognized in this state and elsewhere. See 35 C. J. pp. 1247-1249.

If this were a case where the owner of property had leased it to a tenant for a given term, and, after such leasing but before the expiration of the term, the owner had conveyed the reversion to another, the tenant then might thereby be held to have become the tenant of the new owner. Glidden v. Second Avenue Inv. Co. 125 Minn. 471, 147 N. W. 658, L. R. A. 1915C, 190. In such case the tenant is in possession under a valid lease and his rights as tenant

are not terminated or affected by the conveyance of the reversion. His rights as tenant are superior to those of the new owner. The only effect of the conveyance of the title is to substitute a new landlord in place of the old. But this is not such a case. Here the tenant took his lease after the mortgage had been foreclosed, with full knowledge on his part and on the part of the landlord that the period for redemption would expire on July 18 of the year for which the lease was made. In that situation, the rights of the tenant, as well as those of the landlord, terminated when the period for redemption expired. The tenant was not in possession under any lease which protected him against the title acquired under the mortgage. His right to possession terminated with and at the same time as that of his landlord. In the McCray case, 167 Minn. 295, 208 N. W. 1001, it is said that by operation of law the relation of landlord and tenant ceased and the tenant was subject to immediate, summary dispossession under the forcible entry and unlawful detainer statute. The tenant and the landlord here stood on the same footing. As against the new owner, the right of each of them to possession of the land had terminated. At most, the tenant was thereafter a mere tenant at will of the new owner. Such owner could summarily evict the tenant, or he could require the tenant to attorn to him or to give him such share of the crops as might be agreed upon, or pay any rent agreed upon. But mere silence and inaction of the new owner and the tenant would not seem to revive or continue the prior tenancy or obligate the tenant to share the crops. Having remained in undisturbed possession and harvested and taken the crops it would seem that the tenant owned them and, by setting apart and delivering a share thereof for the plaintiff, the plaintiff became owner and entitled to such share.

The rule that one who raises and harvests a crop of grain while in peaceable possession of the land on which it was grown is the owner thereof; even if wrongfully in possession at the time of the harvest, and whether his possession was initiated by trespass or under a lease which expired before the harvest, or as tenant of a mortgagor whose title terminated by expiration of the redemption period after the crops were partly grown but before harvesting, has

been so long recognized and followed in this state that it should not now be departed from. That the occupant, by surrendering or abandoning possession, or the tenant, by attorning to the new owner, changes the situation is not questioned. The new owner is not deprived of his rights. He may demand immediate possession, or may recognize and accept the tenant as his, and require the tenant to agree to share crops with him, or pay such rent as he may demand, as a condition for the tenant to remain in possession. If the tenant refuses to assent, he may take immediate action to obtain possession of the land and crops and to preserve all his lawful rights.

Under our laws, the holder of the sheriff's certificate on foreclosure sale has no right to the possession of the land or its use or any income therefrom during the redemption year. What he is entitled to is the possession and use of the land after he obtains title thereto. Logically, where he does not see fit to take possession, all he should be entitled to is the value of the use of the land or mesne profits therefrom from the time he became entitled to possession. Recovery of the value of such use is considered to be his remedy in such cases as Lindsay v. W. & St. P. R. Co. 29 Minn. 411, 13 N. W. 191, 43 Am. R. 228; Nash v. Sullivan, 32 Minn. 189, 20 N. W. 144; Woodcock v. Carlson, 41 Minn. 542, 43 N. W. 479, and Aultman & Taylor Co. v. O'Dowd, 73 Minn. 58, 75 N. W. 756, 72 A. S. R. 603, hereinbefore cited. In the O'Dowd case, the court says [73 Minn. 61]:

"It is difficult to see why, on principle, a more severe rule should be applied to a mortgagor, or his grantee or lessee, who holds over after the expiration of the redemption period, than is applied to a disseisor, whose entry was a wilful trespass."

The new owner should not be entitled to take the crops so produced and also recover the value of the use of the land from the time he obtained title; yet, if he is permitted to take the crops, it is difficult to see how that would be a defense to an action to recover for use and occupation. He should not be permitted to stand by and see the mortgagor or his tenant sow and produce a crop on the land up to near harvest time, permit such occupant to remain

peacefully on the land after the time to redeem expires and incur the additional labor and expense of harvesting and threshing, and then step in and take away the entire fruits of the other party's labor and expenditures. If he desires to take the crops, he should act promptly at the expiration of the redemption year. If it were a case of an innocent purchaser, he would be estopped under the rule that one who permits another to possess and exercise dominion over personal property and to hold himself out as the owner thereof is estopped to deny such ownership. The new owner should not be permitted to do indirectly that which he may not do directly, that is, obtain the entire benefit of the use of the land during the redemption period, unless he acts with diligence and strictly within his legal rights.

This question of the right to crops raised during the redemption period but not harvested before that period expires is one that might well be cleared up by some legal enactment. Under present law, the holder of the sheriff's certificate has no right to enter upon the land and produce crops thereon during the redemption year. The mortgagor, if he sows and raises crops thereon which cannot be harvested and severed from the land before the redemption year expires, is liable to lose his labor and expense. The probable result is that the land will remain uncultivated and unused. The mortgagor loses the benefit of the use of the land, which he has a right to have, and the land itself deteriorates to the damage of the certificate holder.

In the present case, the Prudential company became owner of the land on July 18, 1925. It made no demand for or effort to obtain possession, and never made any claim to these crops. It permitted plaintiff's tenant to continue in possession and to harvest, thresh, and remove the crops from the land and deliver to plaintiff, or to the elevator company for him, his share thereof as provided by the lease. Before Anderson obtained any title to the land, the crops had been harvested and severed therefrom, and he obtained no title to the grain. Plaintiff was entitled to recover.

There was some evidence as to a commission mortgage, given in connection with the mortgage to the Prudential company and also foreclosed. The facts in reference thereto are not here important.

.Order affirmed.