# AUGUST ROEHRS v. W. J. THOMPSON AND OTHERS.[1]

January 8, 1932.

No. 28,599.

*Allen & Allen,* for appellants.
*E. H. Nichols,* for respondent.

STONE, J.

Action by the obligee against the principal and his sureties on two appeal bonds. Special issues were submitted to a jury. Findings of fact and order for judgment in plaintiff's favor followed.

[1]Reported in 240 N. W. 111.

Defendants appeal from the order denying their motion for a new trial.

The action is sequel to a former suit, the subject matter of which was a Martin county farm. Plaintiff, claiming that defendant W. J. Thompson was wrongfully in possession, instituted in justice court an action of unlawful detainer and prevailed. It was appealed to the district court, tried de novo, and again plaintiff prevailed. The defendant's second unsuccessful appeal brought the case here, and our decision of it will be found in 179 Minn. 73, 228 N. W. 340. Defendant's appeal from the judgment for restitution entered in the justice court was taken within 24 hours. See G. S. 1923 (2 Mason, 1927) § 9157. Together with the bond then given, it enabled him to remain in possession. That bond was in the penal sum of $3,500, with defendants Christensen and J. R. Thompson as sureties. The appeal to district court was perfected July 23, 1928. In the district court defendant W. J. Thompson was again worsted, and his appeal to this court perfected April 29, 1929. The supersedeas bond then given was in the penal sum of $1,500. The sureties thereon were defendants Christensen and Koenecke. So Christensen became surety on both bonds; J. R. Thompson on only the first; and Koenecke on only the second. The decision below assessed damages against defendants W. J. Thompson, as principal, and Christensen, the surety on both bonds, in the full sum of $5,000; against defendant J. R. Thompson as surety on the first bond in the sum of $3,116; and against defendant Koenecke, surety on the second bond, in the sum of $1,500.

By demurrer, overruled, defendants made timely objection to the joinder in this action of the causes of action arising on the two bonds. It is not argued for defendants that they do not grow out of "the same transaction, or transactions connected with the same subject of action" as required by G. S. 1923 (2 Mason, 1927) § 9277. But it is contended that they do not "affect all parties to the action" as that section requires for joinder.

For plaintiff it is argued that there is really but one cause of action against W. J. Thompson, principal on both bonds; and that the bonds are sued upon merely as securities for plaintiff's single

claim. It is argued also that the first bond covered the action during its pendency in the district court and on through the appeal here; that the second bond, given on the appeal from the district court to this court, covers a part of the same period, and so all defendant sureties are affected. Without suggesting that the first proposition is not well taken, we hold that the second is sound.

The first bond, which stayed the judgment of restitution, G. S. 1923 (2 Mason, 1927) § 9158, was conditioned for the payment of all costs entered against defendant W. J. Thompson; for his payment of "all rents and other damages justly accruing to" plaintiff while "excluded from possession of said premises during the pendency of said appeal"; and also that W. J. Thompson should "abide the order" of the court therein. When the action, by appeal on questions of law and fact, was transferred to the district court, it was there for trial "in the same manner as if commenced" there. G. S. 1923 (2 Mason, 1927) § 9131. It could not be remanded to the justice court. It would remain pending in the district court, or here on appeal, to the end. The words of the statute and the bond, "during the pendency of the appeal," must therefore be considered as meaning "during the pendency" of the action. It was not interrupted by the appeal, nor at an end until final judgment in the district court, January 2, 1930. Then, and not until then, was there a compelled end of the wrongful possession of defendant W. J. Thompson and a restitution of possession to plaintiff.

The second supersedeas bond accompanying the appeal to this court was conditioned in part, again in compliance with statute, G. S. 1923 (2 Mason, 1927) § 9500, for the payment by W. J. Thompson of "the damages sustained by the respondent [plaintiff] in consequence" of the appeal. Thereby the sureties became liable for damages arising from continuance of the wrongful possession so that their obligation overlapped that of the sureties on the first bond. That is enough to show that both sets of sureties were so far affected that there was no misjoinder.

There is no question here of how these two sets of sureties must share liability for costs. That was the main problem in Hinckley

v. Kreitz, 58 N. Y. 583, much stressed for defendants. Here we are concerned only with the underlying liability, shared by both sets of sureties after the second bond was given, to indemnify plaintiff for his wrongful exclusion from possession. In that, this case is much like Bennett v. Brown, 20 N. Y. 99 (distinguished in Hinckley v. Kreitz, 58 N. Y. 583, 587,) where an attachment bond was held to extend, through an appeal, to "final recovery in the action."

■ When on his appeal to the district court defendant W. J. Thompson, to stay judgment of restitution, gave the first bond, crops were growing on the farm which he harvested and sold. The thing which then entitled plaintiff to possession was that, as owner of the legal title, he had just completed cancelation of an executory contract for sale and conveyance of the land to defendant W. J. Thompson. If the history of that contract is material, it appears fully enough at 179 Minn. 73, 228 N. W. 340.

Plaintiff cannot be compelled to take rental value alone, to the exclusion of that of the 1928 crops as the measure of his damage. He was absolutely entitled to possession of farm and crops, growing and unsevered. Defendant W. J. Thompson had no right, legal or equitable, to either the land or growing crops. Were we at liberty to consider equities, his would not weigh heavily. He had been granted liberal terms by plaintiff; and when in the spring of 1928 he planted the crops in question, he took his own chances. He speculated on his ability to comply with the contract and so continue in possession. Such a vendee, whose contract is lawfully canceled, has no more right to emblements than the mortgagor under a mortgage so foreclosed that the right of redemption expires while crops planted by the mortgagor are growing. The purchaser takes the crops to the exclusion of mortgagor and his assigns (Hensler v. Warneka, 169 Minn. 468, 211 N. W. 680) unless the mortgagee has done something to vest in the mortgagor a right which the law does not give him. Schuchard v. St. Anthony & D. Elev. Co. 176 Minn. 37, 222 N. W. 292.

For defendants, Woodcock v. Carlson, 41 Minn. 542, 544, 43 N. W. 479, 480, is cited. The title of crops there discussed was governed

158

by a lease during the term of which they were grown. It did not reserve to the lessor any right of reëntry for nonpayment of rent.

"It must be remembered," said the court, stressing that feature, "that the right to reënter for nonpayment of rent is not incident to the estate of the lessor at common law, but must be reserved in the lease. Unless a lease contained an express provision to that effect, a default in the covenant to pay rent would not work a forfeiture of the lease, or give the landlord the right to reënter, but he was put to his remedy by distress or action to collect his rent."

That is enough to distinguish the case from this one. Here, upon cancelation of his contract, all rights of W. J. Thompson, the vendee, in and to the land and the crops then growing thereon, were at an end—forfeited pursuant to the contract and its cancelation according to its own terms and those of the statute. G. S. 1923, § 9576, as amended, 2 Mason, 1927, id. There is some reasoning in the decision which, if separated far enough from its subject matter, the relation and respective rights of lessor and lessee, would lend color to the argument for defendants. This, for example [41 Minn. 547]: "Certainly the landlord cannot be entitled to rent for the land, and also to all its products." Defendant W. J. Thompson was not the tenant of plaintiff. Nor is plaintiff being allowed rental value in addition to crops for the same period. The crop of 1928 became his property for the reason and in the manner stated. The only rental value allowed plaintiff is for the period following their removal.

Plaintiff is getting only the value of one item of property which was his and wrongfully converted, and the value of the use of another item, the land itself, wrongfully used by defendant W. J. Thompson.

Defendants are not helped by G. S. 1923 (2 Mason, 1927) § 9569, which reads that "in case of ejection, the occupant shall be entitled to enter upon the land, and gather and remove all crops sown thereon prior to entry of judgment against him." That statute controlled decision in Bloemendal v. Albrecht, 79 Minn. 304, 82 N. W. 585. It is part of the occupying claimants act. Defendant W. J.

Thompson is not entitled to its protection. He claims neither "under color of title in fee and in good faith * * * land for which he has given a valuable consideration." Nor does he hold under an "official deed." G. S. 1923 (2 Mason, 1927) § 9565. This is not an action of ejectment. Title is not involved. On the basis of the authorities generally, it is said (anno. L. R. A. 1918A, 550):

"Without exception it has been held that an owner of land obtaining possession either by means of legal process or by other means is entitled to whatever crops are at the time growing on the land. And no distinction is made in such cases between disseisors and mere trespassers."

It may not be so in this case, but ordinarily it is unjust to a vendee, in possession of farm lands under an executory contract of purchase, who has prepared the land for cropping, furnished the seed, and sown and cultivated a crop, to permit the vendor to cancel the contract before the crops are severed and so reap the benefit of the vendee's investment of labor and money. The vendee should at least have the right of entry to care for and remove the crops. Complete justice would be done by allowance to the vendor of rental value from the time he became entitled to possession and during the period of his wrongful exclusion therefrom. A mortgage foreclosure presents a different situation. The mortgagor's right of possession continues for a year. So he has a year's notice of the exact time when his right of possession will cease. In the case of an executory contract for the sale of land, the vendee under our law has usually only 30 days' notice of cancelation. The effect may be to cut off his right in crops sown before any notice of cancelation, and even before any default to justify cancelation. But the remedy is with the legislature and not the courts, who must declare the law as they find it to be.

■ The second bond was effective from April 29, 1929, when the appeal to this court was perfected, to January 2, 1930, when plaintiff finally recovered possession. The value of the use during that period was fixed by the jury at $1,936. The penalty of the bond was only $1,500, to which sum the recovery against the sureties is lim-

ited. So they have nothing to complain of in the assessment of damage against them. As to the period covered by their bond, it was the primary, and the other bond the secondary, security.

The penalty of the first bond was $3,500. The 1928 crop item alone was $3,236. On top of that is value of the use from July 23, 1928. One of the sureties, Christensen, is held for the full penalty of the bond. The other, J. R. Thompson, gets off for $384 less, or only $3,116, a figure arrived at by applying a credit of $120 for plowing on $3,236, the value of the 1928 crops. The thought was that as to the defendants other than J. R. Thompson the damages exceeded "the penalty of the bonds." If that be true as to the second bond, and it is plainly so, Christensen, surety on both bonds, should meet the same remaining charge on the first bond as J. R. Thompson, his cosurety thereon. Christensen's total liability is $5,000. Of that, $1,500 is attributable to the second bond and exhausted by the charge thereon. His remaining liability is for $3,500, the same as that of J. R. Thompson, his cosurety on the first bond. As to the loss of use during the period of the second bond, their liability on the first was the secondary security. How one can be allowed a credit denied the other, or one assessed for more or less damage than the other, does not appear.

But the point presents no more than an irregularity, which doubtless would have been corrected below had it been properly presented there. If correction is wanted, it yet can be had. There is nothing in the case warranting a reversal.

Order affirmed.