FALK et ux,  *Appellants,*
*v.*
AMSBERRY et ux, *Respondents.*
(No. 74-5251, SC 24663)
569 P2d 558

Larry R. Roloff, Eugene, argued the cause and filed briefs for appellants.

John C. Sihler, Eugene, argued the cause and filed a brief for respondents.

HOWELL, J.

## HOWELL, J.

Plaintiffs filed this action to recover damages they incurred because of defendants' refusal to permit them to harvest a grass seed crop growing on defendants' land. Both parties moved for directed verdicts; the trial court denied plaintiffs' motion and granted defendants'. Plaintiffs appeal.

Plaintiffs, husband and wife, are grass seed farmers. For approximately 10 years they leased some 76 acres of farm land from the owner of the land, Norman Larsen. The lease was oral; there is some dispute as to whether the parties intended the lease to be of indefinite duration or to be a yearly lease automatically renewed unless either party manifested a contrary intent. There is no dispute that the lease was to terminate if Larsen sold the land. The lease payments, which were computed on a per acre basis, were to be paid at the end of each crop year on October 1, although the payments were usually paid and accepted on a later date.

In the fall of 1971 plaintiffs seeded approximately 60 acres of the land leased from Larsen in a mixed crop of rye grass and Potomac orchard grass. Potomac orchard grass is a perennial grass with a lifetime of from five to eight years before reseeding is required. Approximately 16 acres of the land were seeded in Gulf rye grass, an annual crop which must be seeded each year.

In June, 1972, Larsen listed his land for sale, as he had on at least one previous occasion. In August of that year the defendants, husband and wife, became interested in the property and began to negotiate with Larsen for the purchase of the property. The plaintiffs were aware that the property was for sale and that the defendants were interested in buying it. Plaintiffs began discussing with defendants the possibility of leasing the land if defendants did, in fact, buy it.

Plaintiffs were not given, prior to October 1, 1972,

or at any time, notice of termination of their lease with Larsen. In September and October, 1972, plaintiffs reseeded the annual grass, put weed killer on the orchard grass, and fertilized all the grasses. They did not make their scheduled lease payment on October 1, but payment was eventually tendered, and accepted, in two payments, one in February and one in June, 1973.

Defendants and Larsen finalized the sale of the property in November, 1972. Negotiations between the plaintiffs and defendants for a lease broke down in early 1973. Defendants ultimately had the grass seed crop harvested and sold.

Plaintiffs' claim for damages is founded on ORS 91.310.[1] The statute, entitled "Farm tenant's right to emblements," provides:

> "When the leasing or occupation is for the purpose of farming or agriculture, the tenant or person in possession shall, after the termination of the lease or occupancy, have free access to the premises to cultivate and harvest or gather any crop or produce of the soil planted or sown by him before the service of notice to quit."[2]

---

[1] Plaintiffs alleged three counts in their complaint: one based on a breach of the statutory duty imposed by ORS 91.310, one based on conversion, and one based on unjust enrichment.

[2] This statute has been a part of Oregon law since 1864. See General Laws of Oregon (Deady) 1845-1864, ch 19, § 8. Its roots go back even further, however, because the statute is, in general, declaratory of an ancient common law rule. Littleton wrote in approximately 1480:

> "* * * Yet if the lessee soweth the land, and the lessor, after it is sown, and before the corn is ripe, put him out, yet the lessee shall have the corn, and shall have free entry, egress, and regress, to cut and carry away the corn * * *." Littleton's Tenures, Book I, ch VIII, § 68 (Wambaugh ed 1903).

Under the common law, a tenant's right to emblements was limited to annual crops *(fructus industriales)* and did not include perennial crops *(fructus naturales). Graves v. Weld,* 110 Eng Rep 731 (1833); *Key v. Loder,* 182 A2d 60 (DC Mun App 1962); 5 Powell, The Law of Real Property, § 663 (Rohan rev 1975). Perennial crops, such as trees, fruits and grasses, were excluded because they were regarded as things "which do not require the labor of the tenant to produce them, being the permanent and natural product of the earth, * * *." 2 Taylor, The American Law of Landlord and

■■ As noted above, there is conflicting testimony as to whether the oral agreement between plaintiffs and Larsen was for a lease of indefinite duration or was for a yearly lease automatically renewed by the parties' silence.[3] The exact nature of the lease is not critical here, because under either possibility the lease did not terminate on October 1, 1972. A lease of indefinite duration, where the lease payment is to be made annually, is a lease from year to year and cannot be terminated without 60 days' notice prior to the·date payment is due. ORS 91.060.[4] A yearly lease which has been automatically renewed by the parties' silence will, by its very nature, require notice prior to the end of the term to effect termination. In either case, since no notice of termination was given, the lease was extended or renewed until October 1, 1973, subject to termination by a sale of the property.

■ The defendants contended and the trial court held

Tenant 148, § 534 (Buswell rev 1904). Time and modern farming practices have worn away this distinction, however, as the courts have recognized that many perennial plants require significant labor each year to produce a profitable yield. Today it is recognized that emblements include crops which require annual care and cultivation even if they do not require annual seeding. *Gentry v. Alexander,* 311 Ky 344, 224 SW2d 143 (1949); 25 CJS Crops, § 3; 5 American Law of Property § 19.16 (Casner ed 1952). Plaintiffs' grass seed falls within this category. Of course, the tenant is entitled to only one crop after the termination of his occupancy.

[3] Defendants argue that neither of these possible leases falls within the allegations of the complaint. Plaintiffs alleged "that on or about October 1, 1972, Plaintiffs and Norman L. Larson [sic] entered into an oral crop lease for the crop year beginning October 1, 1972 and ending October 1, 1973. * * *" (Plaintiffs' amended complaint). It is true that the evidence shows that plaintiffs and Larsen entered into their agreement some 10 years prior to the date specified in the complaint and that the lease from October 1, 1972, to October 1, 1973, was a renewal of that original agreement. But the variance here is not between two entirely different leases, but merely in how a single lease was formed. It is difficult to see how this discrepancy could have misled the defendants to their prejudice. ORS 16.630.

[4] ORS 91.060 states: "One who enters into the possession of real estate with the consent of the owner, and no certain time is mentioned, but an annual rent is reserved, is considered a tenant from year to year. A notice to terminate a tenancy from year to year is sufficient if it is given 60 days prior to the expiration of the period for which, by the terms of the lease and holding, rents are to be paid."

that the plaintiffs' lease was terminated by their failure to pay rent when due on October 1, 1972, and that, therefore, they forfeited their right to emblements. It is true that under the Oregon statute, as under common law, termination of the lease by the tenant's breach works a forfeiture of the right to emblements. *Francis v. Schallberger,* 137 Or 529, 3 P2d 530, 83 ALR 108 (1931); *Myer v. Roberts,* 50 Or 81, 89 P 1051, 12 LRA(ns) 194 (1907); *Sievers v. Brown,* 34 Or 454, 56 P 171, 45 LRA 642 (1899). However, in this case the trial court erred in concluding that the plaintiffs' tenancy was terminated by the late payment of rent. ORS 91.090 provides:

> "The failure of a tenant to pay the rent reserved by the terms of his lease for the period of 10 days, unless a different period is stipulated in the lease, after it becomes due and payable, operates to terminate his tenancy. No notice to quit or pay the rent is required to render the holding of such tenant thereafter wrongful; however, if the landlord, after such default in payment of rent, accepts payment thereof, the lease is reinstated for the full period fixed by its terms, subject to termination by subsequent defaults in payment of rent."

This statute, in essence, gives the landlord an option to terminate, an option which in this case was never exercised.

> "The obligation he [the tenant] assumed upon entering into the lease to pay rent was a condition imposed for the benefit of the lessor and not of the lessee, and when the condition was broken it gave the lessor the right to terminate the lease but the lessor was not compelled to declare a forfeiture. He had a right to waive the forfeiture and enforce the tenant's obligation to pay. If he had done so the lease would still remain in force." *Francis v. Schallberger, supra* 137 Or at 537.

■ In the present case, at the time the sale was consummated Larsen had not exercised his option to terminate the lease. Failure to give notice of termination prior to October 1, 1972, had resulted, as we have pointed out, in extension of the lease for another year, subject to earlier termination by a sale of the property

and subject to Larsen's right of termination because of default in rent payments. This right was never exercised, and thus the lease terminated when the property was sold.

■ Since the tenancy was terminated by the occurrence of an uncertain event, the sale of the land, plaintiffs were entitled to the crops they had nurtured prior to the termination under both common law and the Oregon emblements statute. *Hostetler v. Eccles,* 112 Or 572, 230 P 549 (1924). The fact that plaintiffs were aware of the negotiations for the sale prior to the time they labored on their crop does not cut off their rights to emblements, for Larsen had tried, unsuccessfully, to sell the property before. Because no notice of termination was given to plaintiffs and because the sale, until finalized, was uncertain, plaintiffs were entitled to proceed with their farming practices and were entitled to emblements under the statute.

Reversed and remanded.