John **GALLAGER**, Appellant,

v.

Frank **NELSON**, Respondent.

No. C5–85–2099.

Court of Appeals of Minnesota.

March 18, 1986.

Review Denied May 22, 1986.

Kenneth F. Johannson, Dickel, Johannson, Wall, Taylor, Rust & Schmitz, Crookston, for appellant.

Kurt J. Marben, Charlson & Marben, Thief River Falls, for respondent.

Heard, considered and decided by FORSBERG, P.J., and LANSING and RANDALL, JJ.

## OPINION

LANSING, Judge.

John Gallager brought this action to declare that he is entitled to a growing crop after his landlord's contract for deed was canceled by Frank Nelson, the vendor. The trial court granted Nelson's motion for

summary judgment, and Gallager appeals. We reverse.

## FACTS

On February 1, 1985, John Gallager agreed to rent 480 acres of farmland in Pennington County from William Turtle on a cash-crop lease. The lease term was from March 1, 1985, through February 28, 1986. Gallager paid the cash portion of the rent in advance ($6,000) and planted a wheat crop in the spring of 1985. The Farmers Home Administration (FmHA) has a security interest in the crop.

Turtle and others had purchased the property on a contract for deed from Frank Nelson in October 1979. The contract was recorded in May 1984. When Turtle leased the property to Gallager, the contract payments were current. In April 1985, however, Turtle failed to make an $8,250 contract payment, and Nelson commenced cancellation proceedings under Minn.Stat. § 559.21 (1984). Turtle failed to cure the default, and the contract was canceled in August 1985. Nelson then claimed the right to possess the growing crop. Gallager brought this action against Nelson to declare Gallager's right to possession. The parties stipulated that Gallager could harvest and store the crop until this action is resolved.

On cross-motions for summary judgment, the district court concluded that Nelson is entitled to the crop. Gallager appeals.

## ISSUE

Is a tenant entitled to possession of a growing crop when the landlord's contract for deed is canceled by the vendor?

## ANALYSIS

■ Under the common law doctrine of emblements, if a crop is planted by one rightfully in possession of land, and the person unexpectedly loses possession before harvest, he still has ownership rights to the crops he planted. *Andersen v. Bureau of Indian Affairs*, 764 F.2d 1344, 1347 (9th Cir.1985). The doctrine is premised on the policy of avoiding waste of land and the equity that a tenant should be entitled to the crops or their value since it was his labor that produced them. *Id.*

According to one commentator, the most important area of operation for the doctrine of emblements is between a tenant having a tenancy of uncertain duration and his reversioner:

Coke, and Littleton before him, stated that a tenant who had lost possession, or his representatives, had a right to return to the land within a reasonable time after the termination of his tenancy, and to harvest his annual crops grown thereon, provided

(1) the tenancy had been of uncertain duration;

(2) the termination of the tenancy had been due to an act of God, or an act of the lessor, rather than to some act or default of the tenant; and

(3) the crop had been sowed, by the tenant or by someone claiming under him, and during the right of occupancy.

5 R. Powell, *The Law of Real Property* § 663 at 105–06 (P. Rohan rev. ed. 1985) (footnotes omitted).

■ Closely related to the doctrine of emblements is the rule that one who *wrongfully* possesses land is entitled to crops grown thereon if they are harvested before the person loses possession, but if the wrongful possessor is dispossessed before harvest the crops go to the landowner. The reason for the rule is that

[i]f the wrongdoer is put out of possession before the crop is harvested the landowner should not be obliged to allow him to re-enter in order to cultivate and sever the crop; any such rule would not only result in inconvenience to landowners but would occasion a custom of surreptitious plantings in the hope of reaping the advantage of such a law. On the other hand, it would be unjust to allow a trespasser, possibly in good faith, to plant, cultivate, and harvest a crop to the advantage of a landowner who stands by until all the work is done and

then demands the benefit. He must pursue his remedy with a certain diligence, his deadline in the law of crops being the time of harvesting.

5 *American Law of Property* § 19.16 at 66–67 (A. Casner ed. 1952). The landowner's remedy, when not entitled to the crops, is the right to recover mesne profits (value of the use and occupancy of the land). *See* 5 R. Powell, § 663 at 104. Many Minnesota cases recognize this rule.[1]

■ When Gallager planted the crop, he had the right to occupy the property. When Turtle defaulted and Nelson canceled the contract, Gallager's tenancy came to an end. *See Schrunk v. Andres*, 221 Minn. 465, 22 N.W.2d 548 (1946) (an oral lease made by a vendee terminated with the vendee's interest in the contract). The termination of the tenancy was thus due to the act of the lessor. If Gallager's tenancy were of an uncertain duration, the doctrine of emblements would give him the right to harvest and remove the crop.

■ The reason a tenancy of uncertain duration is required is that a tenant for a fixed term is able to plant his crop with knowledge as to when the term will end. A tenancy of indefinite duration is "subject to termination on the happening of a future event." 1 *American Law of Property* § 2.16(g) at 143. For example, a tenancy for a fixed term held from a life tenant as landlord is indefinite because the landlord's death could happen at any time. *Id.* A tenancy at will is also sufficiently indefinite. *See* 5 R. Powell, § 663 at 106.

We conclude that Gallager's tenancy was for an indefinite term for purposes of this doctrine because the term was subject to Turtle's compliance with the underlying contract for deed. A tenant who rents from a landlord whose property is mortgaged is not necessarily a tenant for an indefinite term because the mortgagor is entitled to remain in possession through the statutory redemption period, and if the tenant has notice of the foreclosure, the tenant would know of a fixed date for termination of the tenancy. Here it is undisputed that the only notice Gallager had before he planted the crop was constructive notice, because the contract had been recorded, of how the property was financed. Gallager is entitled to the crop he planted and cultivated before his tenancy ended. Application of the doctrine in this case comports with the policy of avoiding waste and doing equity to the tenant. *See also Falk v. Amsberry*, 279 Or. 417, 569 P.2d 558 (1977) (tenants held entitled to growing crop, after landlord sold the property, under both the common law of emblements and an Oregon statute).

The trial court relied on *Roehrs v. Thompson*, 185 Minn. 154, 240 N.W. 111 (1932). In *Roehrs* the vendee on a contract for deed had a crop growing when the contract was canceled. The court held that upon cancellation of the contract, the vendee forfeited all right to the land and crops. The court did not discuss the doctrine of emblements, but it would appear not to apply because a vendee is not a tenant for an uncertain term. *Cf. Lake v. Lund*, 92 Minn. 280, 282–83, 99 N.W. 884, 885 (1904) (a vendee lawfully in possession of the property cannot avail himself of the wrongful possessor rule). *Roehrs* does not address the rights of a tenant to crops that

---

1. *See Woodcock v. Carlson*, 41 Minn. 542, 546, 43 N.W. 479, 480 (1889) ("[I]t is the settled rule in this state that, with respect to crops which are the result wholly of the labor of the disseisor, and which he has severed and removed * * while still in possession, the title is in him, and that the sole remedy of the owner of the land is his action for mesne profits.").

In the following cases the wrongful possessor who remained in possession of the premises and harvested the crop was held entitled to it: *Aultman & Taylor Co. v. O'Dowd*, 73 Minn. 58, 75 N.W. 756 (1898) (lessee remained in possession after expiration of the mortgage redemption period); *Schuchard v. St. Anthony & Dakota Elevator Co.*, 176 Minn. 37, 222 N.W. 292 (1928) (same); *Crain v. Baumgartner*, 192 Minn. 426, 256 N.W. 671 (1934) (lessee was notified after planting crop that his lease would not be renewed). In contrast, the owner of the land in other cases was held entitled to the crop because the owner took possession before harvest: *McCray v. Superannuated Fund of Evangelical Association*, 167 Minn. 295, 208 N.W. 1001 (1926); *Mehl v. Norton*, 201 Minn. 203, 275 N.W. 843 (1937).

are planted and cultivated before the contract is canceled. It is clear, however, that any interest Turtle had in the crop under the cash-crop lease would be forfeited to Nelson.[2]

## DECISION

Gallager is entitled to the crop under the common law doctrine of emblements.

Reversed.

FORSBERG, J., dissents.

FORSBERG, Judge dissenting:

I respectfully dissent. The trial court cited *Roehrs v. Thompson*, 185 Minn. 154, 240 N.W. 111 (1932) as authority for its position. I agree. The court in that case said:

"Without exception it has been held that an owner of land obtaining possession either by means of legal process or by other means is entitled to whatever crops are at the time growing on the land. And no distinction is made in such cases between disseisors and mere trespassers." [cite omitted]

\* \* \* \* \* \*

In the case of an executory contract for the sale of land, the vendee under our law has usually only 30 days' notice of cancellation. The effect may be to cut off his rights in crops sown before any notice of cancellation, and even before any default to justify cancellation. But the remedy is with the legislature and not the courts, who must declare the law as they find it to be.

*Id.* at 159, 240 N.W. at 113. The reason for such holding is that a vendor could essentially be deprived of the use of his or her land, even though the vendee's interest has been extinguished (assuming cancellation occurred immediately following planting).

---

2. The FmHA's security interest appears to be enforceable regardless of who owns the crops under property law. In *United States v. Newcomb*, 682 F.2d 758, 761 (8th Cir.1982), a vendor canceled a contract for deed, had the vendees ejected, and claimed the growing crop as against the FmHA, which held a security interest. The court held that the security interest was valid and that Article 9 controlled any transaction intended to create a security interest in crops, rather than state property law.