John SCOTT, Plaintiff and Appellee,

v.

Bob HYDE and Steve Hyde, Defendants, Third Party Plaintiffs, and Appellants,

v.

Eileen M. GERKEN, Third Party Defendant and Appellee.

No. 16276.

Supreme Court of South Dakota.

Considered on Briefs Feb. 16, 1989.

May 17, 1989.

in Finding of Fact 19.

Craig E. Smith of Neumayr & Smith, Gettysburg, for defendants, third party plaintiffs, and appellants.

John S. Lovald of Olinger, Srstka, Lovald & Robbennolt, P.C., Pierre, for plaintiff and appellee, third party defendant, and appellee.

SABERS, Justice.

Bob and Steve Hyde (Hydes) appeal a judgment declaring the termination of their lease interest in certain farmland.

### Facts

In 1967, Eileen Gerken (Gerken) acquired a quarter section of farmland in Sully County, South Dakota. She lived on the farmstead on the property and rented out the farmland. Under a five-year written lease, Gerken cash rented the farmland to Hydes in 1981.[1] The lease expired on December 24, 1986. In September of 1986, Hydes informally spoke with Gerken on the main street of Onida, South Dakota. Gerken told Hydes that she was considering selling the property and that they would be given the first opportunity to match any offer. Hydes claimed that Gerken told them they could plant the winter wheat on the property that fall. Gerken denied this part of the conversation. In October, Hydes planted 103 acres of winter wheat on the property.

John Scott (Scott) submitted an offer to purchase the property from Gerken in late

---

1. Under the terms of the lease, Hydes rented 142 acres of tillable land. The rent was $2,698 with $1,349 payable on March 15 and $1,349 payable on October 15 of each year.

1986. Gerken gave Hydes an opportunity to match this offer. In February of 1987, Hydes informed Gerken that they were not interested in purchasing the property. Prior to their rejection, they presented Gerken with a statement for participation in the Federal Farm Program. This document indicated that Hydes were cash renting the property. Gerken signed this document after being told that she must immediately sign up in order to preserve her rights in the Federal Farm Program.

Gerken sold the property to Scott on March 11, 1987. During the negotiations leading up to the sale, the parties discussed compensation to Hydes for the plant of winter wheat, but nothing firm was decided except that Scott would be responsible for such compensation. Following the purchase, Hydes submitted a bill for $3,500. Scott offered Hydes $650. Hydes then tendered the March 15 lease payment under the expired five-year lease to Scott on April 29, 1987. Scott did not cash the check and his attorney immediately sent a letter to Hydes demanding that they withdraw any claim to the property. The check was returned to Hydes on July 10.

On June 17, Scott brought a declaratory action against Hydes to determine the legal possession of the property, and the right to the crops and Federal Farm Program payments for the 1987 crop year. Hydes filed an answer and counterclaim against Scott, and later filed a third party complaint against Gerken.[2] The winter wheat crop was harvested in July of 1987 and placed into storage pending resolution of this suit.[3] The trial court found that Gerken consented to Hydes' request to plant the winter wheat, but that Gerken and Hydes had not agreed to continue the lease into 1987. The court held since Hydes held no lease interest, they had no interest in the 1987 winter wheat crop and the Federal Farm Program payments from the land.

The court awarded reimbursement to Hydes for the winter wheat planting in the amount of $1,427.[4] We affirm.

1. *Whether Hydes continued as lessees during the 1987 crop year.*

A lease for an agreed term is terminated by its expiration, without the need for action by either party. SDCL 43-32-22; *Peterson v. Rogers,* 347 N.W.2d 580 (S.D.1984). The five-year lease between Gerken and Hydes terminated December 24, 1986. Hydes had no further right to the property absent facts establishing a renewal of the lease.

Hydes cite several statutes to support their claim that the lease carried over to 1987, despite the express termination of the written lease. SDCL 43-32-14 provides:

> If a lessee of real property remains in possession thereof after the expiration of the hiring and the lessor accepts rent from him, the parties are presumed to have renewed the hiring on the same terms and for the same time, not exceeding one year.

Hydes claim that they remained in possession of the property by planting wheat with Gerken's permission and that Scott accepted the payment of rent by holding the check for a period of a month and one-half. The court found that Gerken consented to Hydes planting the winter wheat, but not to a continuation of the lease or possession by Hydes. Further, Scott did not accept the rent payment from Hydes as his attorney immediately responded to the check tendered by Hydes. This letter indicated Scott's unwillingness to accept the tender of rent from Hydes. Finally, Hydes knew that Gerken was selling the property to Scott and had no intention to continue the lease. The presumption of SDCL 43-32-14 is inapplicable under the facts of this case.

Hydes also claim that SDCL 43-32-22.1 supports their argument:

---

**2.** Scott agreed to defend and indemnify Gerken in return for a reduction of $2,000 from the land payments due from Scott.

**3.** The grain receipts from the Harvest States Cooperative in Onida show that 2539.92 bushels of winter wheat were placed into storage.

**4.** The court found that Hydes had planted 150 bushels of winter wheat at a market price of $2.33 per bushel and added $1.00 per bushel because it was seed wheat. The court also awarded a custom rate of $4.50 per acre for planting and field preparation on 103 acres.

In the case of farm tenants, occupying and cultivating agricultural land of forty acres or more, under an oral lease, the tenancy shall continue for the following crop year upon the same terms and conditions as the original lease unless written notice for termination is given by either party to the other by November first, whereupon the tenancy shall terminate March first following; provided further, the tenancy shall not continue because of absence of notice in case there be default in the performance of the existing rental agreement.

This statute deals with oral leases and is inapplicable in this case. No notice was necessary to terminate the five-year written lease.

 Hydes also claim that the common law doctrine of emblements entitles them to the 1987 crop. The doctrine of emblements protects the right of one who holds the land for an uncertain period. *Bolzer v. Hamilton,* 78 S.D. 388, 103 N.W.2d 183 (1960). The doctrine of emblements permits such a tenant to remove crops planted on the property prior to the termination. *Id.* The facts of this case do not support the doctrine of emblements. Though Hydes planted the winter wheat prior to the termination date of the tenancy, the period of the tenancy was certain. Clearly, Hydes accepted the *known* risk that the lease would terminate in 1986.

### 2. Estoppel

 Hydes claim that Scott should be estopped from asserting that the lease term did not carry over to 1987 because Gerken signed the Federal Farm Program document naming them as cash renters. Hydes also argue that they relied to their detriment by planting the winter wheat in the fall of 1986.

This court has recognized the doctrine of promissory estoppel where a party has detrimentally relied upon the promise of another. *Valley Bank v. Dowdy,* 337 N.W.2d 164 (S.D.1983); *Northwestern Engineering Co. v. Ellerman,* 69 S.D. 397, 10 N.W. 2d 879 (1943). In *Valley Bank, supra* at 165, we cited the *Restatement (Second) of Contracts* § 90 (1979) in setting out the elements of promissory estoppel.

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

The trial court findings do not support promissory estoppel. The court found that Gerken consented to Hydes planting the winter wheat, but made no promise respecting renewal of the lease. The court further found that she informed Hydes that she intended to sell the property. Hydes were fully aware of the lease termination and that Gerken intended to sell the property both at the time they planted the winter wheat and when they induced Gerken to sign the Federal Farm Program document. Bob Hyde testified:

We knew that it was in her best interest to sell it and that was her wishes and we decided between the two of us that she had been good to us all through the years, and we were going to do whatever we could to help, you know, make the sale possible.

Finally, injustice and unjust enrichment were avoided by reimbursing Hydes $1,427 for the seeding of winter wheat. Hydes have not challenged the amount of compensation and the evidence supports the fairness of the award. Accordingly, the judgment of the trial court is affirmed.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

I respectfully dissent. The doctrine of emblements should be applied in this case. Tendered, as part of my rationale, is SDCL 43-8-6, which provides:

A tenant for years or at will, unless he is a wrongdoer by holding over, may occupy the building, take the annual products of the soil, work mines and quarries open at the commencement of his tenancy, and cultivate and harvest

the crops growing at the end of his tenancy.

This statute, South Dakota's partial codification of the common-law doctrine of emblements, formerly numbered SDC 38.0405, was interpreted in *Bolzer v. Hamilton*, 78 S.D. 388, 103 N.W.2d 183 (1960):

> The doctrine or right of emblements entitles one who holds land for a period subject to termination at a time which he cannot ascertain beforehand to remove from the land after the termination of his tenancy the annual crops or emblements which he has planted thereon prior to such termination, if the termination is brought about without any fault on his part or without any act of his intended to bring about such a result.

*Bolzer*, 78 S.D. at 394, 103 N.W.2d at 186. This right is premised on the justice of assuring the tenant compensation for his labor and the desirability of encouraging husbandry as a matter of public policy. *Strand v. Boll*, 44 S.D. 228, 231, 183 N.W. 284, 285 (1921). *Strand* applied the common law doctrine of emblements to life tenants' estates, which are beyond the reach of our statute. The rationale of *Strand* is reflected in recent caselaw: "The reason a tenancy of uncertain duration is required is that a tenant for a fixed term is able to plant his crop with knowledge as to when the term will end." *Gallager v. Nelson*, 383 N.W.2d 424, 426 (Minn.App.1986). "A tenancy of indefinite duration is 'subject to termination on the happening of a future event.'" *Gallager, id.*

The future event, in this case, was Gerken's potential sale of the property, which was purely hypothetical when the Hydes, with Gerken's permission, planted their crops. The trial court, in finding of fact No. 7,\* held, inter alia, that "Eileen Gerken did agree that winter wheat could be planted in case the real estate was not sold." This finding, combined with Gerken's February 25, 1987, signature on plaintiff's exhibit No. 3, a document required for partic-

ipation in a federal agricultural program, indicates that the Hydes were, in fact, Gerken's tenants, raising their crops on her land with her knowledge and permission. They were not holding over wrongfully, in terms of SDCL 43–8–6. The relationship between the Hydes and Gerken created a right to emblements which the Hydes can enforce:

> Since the tenancy was terminated by the occurrence of an uncertain event, the sale of the land, plaintiffs were entitled to the crops they had nurtured prior to the termination under both common law and the [ ] emblements statute.

*Falk v. Amsberry*, 279 Or. 417, 423, 569 P.2d 558, 561 (1977). Tenants at sufferance, who hold over after a tenancy for years, are entitled to emblements if their landlord recognizes their tenancy for an additional period. *See Lewis v. Lewis Nursery, Inc.*, 80 N.C.App. 246, 342 S.E.2d 45, 48 (1986). Here, the period was as in *Falk*, uncertain. Therefore, the emblements doctrine applied. Under either common law, as interpreted in *Strand*, or our emblements statute, as construed in *Bolzer*, the Hydes were entitled to the fruits of their labor, their crop. Their hard work, not the power of nature, produced fructus industriales, as emblements were known in the common law. *See* Black's Law Dictionary, 341 (5th Abridged Ed.1983). The majority's award of seeding costs does not eliminate unjust enrichment on these facts. As Littleton wrote, in 1480:

> Yet if the lessee soweth land, and the lessor, after it is sown, and before the corn is ripe, put him out, yet the lessee shall have the corn, and shall have free entry, egress, and regress, to cut and carry away the corn....

Littleton's Tenures, Book I, ch. VIII, § 68 (Wambaugh ed. 1903) (quoted in *Falk v. Amsberry*, 569 P.2d 558, 559–60 n. 2 (Or. 1977)).

---

\* Finding of fact No. 7: That a conversation between Hydes and Gerken took place sometime in September of 1986 concerning planting of winter wheat. There was a discussion about planting of some wheat, but there was not a

meeting of the minds as to an extension of the lease. The Court concludes that Eileen Gerken did agree that winter wheat could be planted in case the real estate was not sold.

If Gerken consented to Hydes planting the wheat, would this Court permit:

(a) Gerken to have the bounty of Hydes' seed and labor?

(b) A total stranger, Scott, to make off with the wheat crop?

What kind of justice is this?

Hydes are not coolies. To give them the price of their seed wheat and an award of labor at a "custom rate" is to deny them an entrepreneurial existence. Once Gerken consented to their planting the winter wheat, the wheat crop and possession of the land was theirs. Hydes had the right to exercise ownership over their wheat crop. Gerken simply wanted to ride two horses. She wanted:

(a) to have the property in production; and

(b) to sell it, also.

She cannot have it both ways.